SHELTER INSURANCE COMPANIES, APPELLEE, V. ALICE M. FROHLICH, APPELLANT.

498 N.W.2d 74

Filed April 2, 1993.    No. S-90-554.

Daniel J. Duffy and Michael K. Huffer, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Kathleen A. Jaudzemis and Andrew D. Strotman, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and HOWARD, D.J., Retired.

SHANAHAN, J.

Pursuant to Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1989) (Uniform Declaratory Judgments Act), Shelter Insurance Co. (Shelter) brought an action for a declaratory judgment against Alice M. Frohlich concerning funds held in trust under an escrow agreement pertaining to distribution of settlement proceeds from Frohlich's settlement of her personal injury claim against Gini and Harlan Denbeste. After the

district court for Lancaster County granted summary judgment to Shelter, Frohlich appealed.

## BACKGROUND

On August 12, 1984, Frohlich was a passenger in a car driven by Frankie Tipton, a policyholder insured by Shelter. Tipton's car collided with a car driven by Gini Denbeste. Farmers Mutual of Nebraska had the liability insurance coverage on the Denbeste automobile. As a result of the collision, Frohlich suffered severe and permanent injuries which left her partially disabled and which resulted in medical expenses exceeding $50,000.

On September 6, 1984, since Tipton's policy contained a "medical pay" provision, Frohlich's lawyer telephoned Shelter regarding reimbursement of medical expenses paid by Frohlich on account of the accident. In a September 14 letter to Frohlich's lawyer, Shelter stated that Tipton's policy provided $10,000 in medical payment coverage in the following policy provision:

> **Coverage C—Medical Payments**—The Company will pay all reasonable expenses which are incurred within one year from the date of accident for necessary medical, surgical, x-ray, and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, for bodily injury caused by accident and sustained by:
>
> . . . .
>
> (b) Any other person while occupying (1) the described automobile, while being used by the named insured . . . .

Shelter's letter also called attention to a subrogation clause in Tipton's policy:

> In the event of any payment under Coverage C [Medical Payments] of this policy, the Company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization, and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

On October 26, Frohlich's lawyer wrote in response to Shelter's letter, disputing Shelter's claimed subrogation interest resulting from any payment made under the medical pay provision of Tipton's policy: "At this time we are not prepared to concede that point as we believe that the Nebraska Supreme Court will resolve that issue with a contrary interpretation." Moreover, in the October 26 letter, Frohlich asserted that she was entitled to the entire $10,000 medical payment coverage because her medical expenses at that time exceeded $31,000. Shelter paid Frohlich $10,000 under Tipton's policy and, in a letter accompanying the payment, stated: "This letter is also to advise we will pursue our own subrogation for medical payments against Farmers Mutual of Nebr."

Later, Frohlich sued Gini Denbeste and her father, Harlan Denbeste. As a result of compromise and settlement of Frohlich's claim against Denbestes, Farmers Mutual paid Frohlich $212,500. Shelter did not participate in the settlement process. The record does not contain the actual settlement agreement or release for Frohlich's claim against Denbestes. However, as an aspect of the settlement, Frohlich, Denbestes, and Farmers Mutual, but not Shelter, signed an escrow agreement which required that $10,000 of the $212,500 settlement be deposited in escrow and which further provided: (1) Farmers Mutual acknowledged receipt of Shelter's subrogation claim; (2) the $10,000 escrow fund would be released when Shelter withdrew its subrogation claim, the statute of limitations barred Shelter's claim, or the subrogation claim was resolved; and (3) Frohlich would hold harmless the escrow agent, Denbestes, and Farmers Mutual from any claim by Shelter concerning its subrogation claim and the escrow fund. The escrow agreement expressly stated that the escrow fund resulted from "a compromise settlement of [the] litigation" between Frohlich and Denbestes.

Shelter subsequently filed its declaratory judgment action against Frohlich, asserting entitlement to the $10,000 escrow fund by virtue of Shelter's payment to Frohlich under Tipton's policy and the doctrine of subrogation. Both Shelter and Frohlich moved for a summary judgment. The court entered summary judgment for Shelter and ordered that the $10,000

escrow fund be paid to Shelter.

## ASSIGNMENTS OF ERROR

Frohlich asserts that the district court erred by (1) finding that Shelter has a subrogation interest in the $10,000 escrow fund and ordering that the fund be paid to Shelter, (2) finding that Shelter was not required to prove that Frohlich was fully compensated for her injuries sustained in the automobile accident, (3) ruling that Shelter's action was properly brought against Frohlich rather that against Denbestes and Farmers Mutual, and (4) failing to find that Shelter waived its subrogation interest in the escrow fund.

## STANDARD OF REVIEW

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.
*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 162-63, 425 N.W.2d 872, 875 (1988). Accord, *Dowis v. Continental Elev. Co.*, 241 Neb. 207, 486 N.W.2d 916 (1992); *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992).

## SHELTER'S SUBROGATION INTEREST

Frohlich contends that Shelter has no subrogation right as the result of the medical payments provision of Tipton's policy. However, Tipton's policy expressly stated that Shelter "shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization."
In *Milbank Ins. Co. v. Henry*, 232 Neb. 418, 441 N.W.2d 143

(1989), Milbank brought an action against its insured, Henry, who had been injured while driving her car. In the suit against Henry, Milbank joined as defendants the other motorist involved in the accident and his insurance company which provided liability coverage. Milbank sought to recover the amount paid to Henry under the medical payments provision of her Milbank policy. At issue was the validity of a subrogation provision in Milbank's policy: " 'If we make a payment under this policy and the person, to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment.' " 232 Neb. at 419, 441 N.W.2d at 144-45. This court stated that " 'a subrogation clause of this kind which gives an insurer a right to subrogation against a third-party tortfeasor for medical payments actually made is a valid and enforceable contractual provision.' " 232 Neb. at 420, 441 N.W.2d at 145 (quoting *Travelers Indemnity Co. v. Vaccari*, 310 Minn. 97, 245 N.W.2d 844 (1976)).

Although the subrogation clause in Shelter's policy differs verbally from the clause presented in *Milbank Ins. Co.*, the difference is immaterial for the purpose of determining whether Shelter's subrogation provision is valid. Both the subrogation provision in Shelter's policy and the provision examined in *Milbank Ins. Co.* state, in substance, that an insurer has a right of subrogation for a recovery from a tort-feasor when the insurer has made payments to the insured under the medical payments coverage of an insurance policy. Thus, the subrogation clause in the insurance agreement between Tipton and Shelter is valid.

The question remains, however, whether Shelter's subrogation right applies when Shelter, under its medical payment coverage, pays medical expenses of one other than its insured. The fact that Frohlich was not one of Shelter's policyholders does not determine whether Shelter is entitled to subrogation. Frohlich became a third-party beneficiary of the policy or insurance contract between Tipton and Shelter when Shelter paid Frohlich's medical expenses as required by the policy which Shelter had issued to Tipton. Therefore, Frohlich, by accepting a contractual benefit, is bound by the subrogation

clause contained in the insurance policy. See *Haakinson & Beaty Co. v. Inland Ins. Co.*, 216 Neb. 426, 344 N.W.2d 454 (1984) (a third-party beneficiary who accepts a benefit under a contract also assumes an obligation imposed by the contract conferring the benefit). Thus, under the provisions of Tipton's insurance policy, Shelter obtained a subrogation right or interest concerning money recovered by Frohlich when Shelter paid the debt or obligation owed to Frohlich by Denbestes and their insurer. Yet, the precise nature or extent of Shelter's subrogation interest or right is undefined by Tipton's insurance policy.

*General Principles of Subrogation.*

"Subrogation is substitution of one person who is not a volunteer, a subrogee, for another, a subrogor, as the result of the subrogee's payment of a debt owed to the subrogor so that the subrogee succeeds to the subrogor's right to recover the amount paid by the subrogee." *Ehlers v. Perry*, 242 Neb. 208, 221, 494 N.W.2d 325, 334 (1993). Generally, " ' " '[s]ubrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other.' " ' " *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 194, 459 N.W.2d 718, 734 (1990) (quoting *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988)). Accord *Ehlers v. Perry, supra*. The preceding applies to subrogation based on a contract, known as conventional subrogation, as well as to subrogation arising by operation of law, that is, legal subrogation.

"To be entitled to subrogation, one must pay a debt for which another is liable." *Ehlers v. Perry*, 242 Neb. at 222, 494 N.W.2d at 335. See, also, *State Auto. & Cas. Underwriters v. Farmers Ins. Exchange*, 204 Neb. 414, 282 N.W.2d 601 (1979); *Luikart v. Buck*, 131 Neb. 866, 270 N.W. 495 (1936).

Generally, subrogation is unavailable until the debt owed to a subrogor has been paid in full. See *Skinkle v. Huffman*, 52 Neb. 20, 71 N.W. 1004 (1897). See, generally, 73 Am. Jur. 2d *Subrogation* § 30 n.21 (1974). However, if a contract provides for subrogation on payment of less than the full amount of a debt or loss, partial payment of a debt or loss may be the basis

for subrogation. See *American Surety Co. of N. Y. v. Clarke*, 94 Mont. 1, 20 P.2d 831 (1933). See, generally, 73 Am. Jur. 2d, *supra*, § 33 n.43. However, unless a contract specifically provides otherwise, equitable principles apply even when a subrogation right is based on contract. *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699 (Minn. 1983); *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982); *Willard v. Automobile Underwriters, Inc.*, 407 N.E.2d 1192 (Ind. App. 1980); *Skauge v. Mountain States Tel. & Tel.*, 172 Mont. 521, 565 P.2d 628 (1977); *Lyon v. Hartford Accident and Indemnity Company*, 25 Utah 2d 311, 480 P.2d 739 (1971), *overruled on other grounds, Beck v. Farmers Ins. Exchange*, 701 P.2d 795 (Utah 1985). Also, if a contractual right of subrogation is merely the usual equitable right which would have existed in any event in the absence of a contract, equitable principles control subrogation. See, *Willard v. Automobile Underwriters, Inc., supra*; *Maryland Casualty Co. v. Southern Pac. Co.*, 119 F.2d 672 (9th Cir. 1941). See, generally, 73 Am. Jur. 2d, *supra*, § 33 n.45. When a right of subrogation arises by operation of law, existence of an agreement or contract authorizing subrogation is unnecessary. *Rawson v. City of Omaha*, 212 Neb. 159, 322 N.W.2d 381 (1982); *Cagle, Inc. v. Sammons*, 198 Neb. 595, 254 N.W.2d 398 (1977). Thus, as this court acknowledged in *Rawson v. City of Omaha*, the right of subrogation "does not rest on contract and no general rule can be laid down which will afford a test for its application in all cases. The facts and circumstances of each case determine whether the doctrine is applicable." 212 Neb. at 164, 322 N.W.2d at 384.

*Subrogation and Insurance.*

In the context of insurance, the right of subrogation is based on two premises: (1) an insured should not be allowed to recover twice for the same loss, which would be the result if the insured recovers both from the insured's insurer and the tort-feasor, and (2) a wrongdoer should reimburse an insurer for payments that the insurer has made to its insured. See, *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992); *Powell v. Blue Cross and Blue Shield*, 581 So. 2d 772

(Ala. 1990); *Rimes v. State Farm Mut. Auto. Ins. Co., supra*; *Ortiz v. Great Southern Fire & Cas. Ins. Co.*, 597 S.W.2d 342 (Tex. 1980); *Wimberly v. Am. Cas. Co. of Reading, Pa.*, 584 S.W.2d 200 (Tenn. 1979); *Skauge v. Mountain States Tel. & Tel., supra*; *Oss v. United Services Auto. Ass'n*, 807 F.2d 457 (5th Cir. 1987). See, also, 16 George J. Couch, Cyclopedia of Insurance Law § 61:18 (rev. ed. 1983). As observed in *Oss v. United Services Auto. Ass'n*, subrogation clauses should be construed to "confirm, but not expand, the equitable subrogation rights of insurers." 807 F.2d at 460 (citing 4 George E. Palmer, The Law of Restitution § 23.14 (1978)). Moreover,

> subrogation is in its nature equitable . . . . [T]he insurance contract setting up and declaring the rights between the parties preserves the unity and control of the insured over his cause of action for personal injury and property damage against the tort-feasor, and yet fully protects the insurer's subrogation right.

*Krause v. State Farm Mut. Auto. Ins. Co.*, 184 Neb. 588, 592-93, 169 N.W.2d 601, 604 (1969).

Thus, an insurance policy reaffirms the rights of parties relative to subrogation but, in the absence of an express provision to the contrary, does not alter fundamental principles pertaining to subrogation. Although Shelter's subrogation right arises under its insurance policy issued to Tipton, the exact nature and extent of Shelter's subrogation right is determined by the circumstances of Frohlich's settlement and the resulting equities.

## IS TOTAL COMPENSATION OF A SUBROGOR REQUIRED?

*The Argument.*

Frohlich contends that Shelter, in order to prevail and recover on the basis of subrogation, must prove that she has been fully compensated for her loss resulting from the automobile accident. However, Shelter contends that, under *Milbank Ins. Co. v. Henry*, 232 Neb. 418, 441 N.W.2d 143 (1989), Nebraska law imposes no requirement that an insurer prove that its subrogor has been fully compensated for a loss before the insurer is entitled to subrogation.

In *Milbank Ins. Co.*, this court simply held that a subrogation clause in a medical payments provision of an insurance policy is valid and binding as the result of payments for covered medical expenses. Additionally, in *Milbank Ins. Co.*, we held that a settlement between the insured and a third party did not destroy the insurer's subrogation right when the third party had notice of the insurer's subrogation interest and claim. However, in *Milbank Ins. Co.*, we did not address the issue whether a subrogation right is conditioned on full compensation of a subrogor.

*Is Full Compensation a Prerequisite to Subrogation?*

Although we have not previously addressed the precise issue presented in Frohlich's case, we have stated that

"[w]here the assured, as in case of partial insurance, sustains a loss, in excess of the reimbursement or compensation by the underwriter, he has an undoubted right to have it satisfied by action against the wrong-doer. But if, by such action, there comes into his hands, any sum for which, in equity and good conscience, he ought to account to the underwriter, reimbursement will, to that extent, be compelled in an action by the latter, based on his right in equity to subrogation. *But the assured will not, in the forum of conscience, be required to account for more than the surplus, which may remain in his hands, after satisfying his own excess of loss in full, and his reasonable expenses incurred in its recovery*; unless the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with him, in the prosecution."

(Emphasis supplied.) *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 133, 109 N.W.2d 174, 177-78 (1961) (quoting *Newcomb et al. v. Cincinnati Ins. Co.*, 22 Ohio St. 382, 10 Am. R. 746 (1872)). Accord *Krause v. State Farm Mut. Auto. Ins. Co., supra.*

This brings us to the question: Is an insured's full compensation for a loss a prerequisite to subrogation?

Shelter cites only one appellate decision to support its contention that full compensation is unnecessary for an

insurer's right of subrogation. See *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Anderson*, 48 Ala. App. 172, 263 So. 2d 149 (1972). On the other hand, research indicates that nearly every appellate court that has considered the question has recognized that unless an insurance policy contains a provision to the contrary, an insurer's right to recover under a subrogation clause of an insurance policy requires that the insured must have been fully compensated for the loss covered by the policy. See, e.g., *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992) (the full compensation rule was inapplicable on the facts of the case but, in an appropriate factual setting, applies to an insurer's right of subrogation); *Powell v. Blue Cross and Blue Shield*, 581 So. 2d 772 (Ala. 1990) (a subrogation right does not exist until an insured has been fully compensated for a loss); *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699 (Minn. 1983) (notwithstanding the insurer's payment of an insured's medical expenses, an insurance policy's subrogation clause does not entitle the insurer to reimbursement from the insured's settlement proceeds when the recovery failed to fully compensate the insured); *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982) (an insurance policy subrogation clause for reimbursement of medical expenses paid on behalf of an insured does not entitle the insurer to reimbursement when the insured's settlement was for an amount less than the total damages sustained by the insured); *Southern Farm Bureau Cas. Ins. v. Sonnier*, 406 So. 2d 178 (La. 1981) (when an insurer pays its insured only part of the damages caused by a tort-feasor, the insurer is only partially subrogated to the insured's right to compensation, and the insured, in preference to the insurer-subrogee, is entitled to seek the balance of the partially paid claim against the tort-feasor); *Ortiz v. Great Southern Fire & Cas. Ins. Co.*, 597 S.W.2d 342 (Tex. 1980) (summary judgment is improper in a suit on a fire insurance policy covering a structure when the record failed to disclose what portion of the insured's settlement was allocated to the loss of real property); *Wimberly v. Am. Cas. Co. of Reading, Pa.*, 584 S.W.2d 200 (Tenn. 1979) (insurer has no subrogation right in the insured's recovery from a tort-feasor where the insured has not

been fully compensated for the loss); *Skauge v. Mountain States Tel. & Tel.*, 172 Mont. 521, 565 P.2d 628 (1977) (when an insured has sustained a loss exceeding the amount paid by the insurer, the insured is entitled to full compensation for the entire loss before the insurer can assert its right of legal subrogation against the insured or the tort-feasor); *Lyon v. Hartford Accident and Indemnity Company*, 25 Utah 2d 311, 480 P.2d 739 (1971), *overruled on other grounds, Beck v. Farmers Ins. Exchange*, 701 P.2d 795 (Utah 1985) (an insured must make a full recovery for a loss before the insurer is entitled to any part of a recovery from the tort-feasor); *Mattson v. Stone*, 32 Wash. App. 630, 648 P.2d 929 (1982) (if an insured has recovered all damages by a tort-feasor, the insurer has a subrogation interest in the recovery); *Oss v. United Services Auto. Ass'n*, 807 F.2d 457 (5th Cir. 1987) (summary judgment is unavailable in the absence of a factual finding concerning the expected amount of medical costs or the ability of the tort-feasor to pay beyond the amount received in a settlement). See, generally, 3 John A. & Jean Appleman, Insurance Law and Practice § 1675 (Supp. 1992); 16 George J. Couch, Cyclopedia of Insurance Law, ch. 61, *Subrogation* (rev. ed. 1983). Thus, in the absence of a valid contractual provision or statute to the contrary, an insurer may exercise its right of subrogation only when the insured has obtained an amount that exceeds the insured's loss.

Although courts have expressed various rationales for the conclusion that an insured must be fully compensated for a loss before the insurer is entitled to subrogation, the underlying premise seems to be that, under principles of equity, an insurer is entitled to subrogation only when the insured has received, or would receive, a double payment by virtue of an insured's recovering payment of all or part of those same damages from the tort-feasor. As observed in *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d at 276-77, 316 N.W.2d at 355:

> "[W]here either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." [Quoting *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977).]

. . . .

. . . [W]e find it difficult to justify the position of the insurer, which has already been paid a premium for the risk it assumed and which would have been obligated to make the medical payments irrespective of its insured's negligence and irrespective of whether or not a culpable third party could have been found.

Also, in *Rimes* the court noted that "[s]ubrogation is to be allowed only when the insured is compensated in full by recovery from the tortfeasor. The insured is to be made whole, but no more than whole." 106 Wis. 2d at 272, 316 N.W.2d at 353. Accord, *Powell v. Blue Cross and Blue Shield*, 581 So. 2d 772 (Ala. 1990); *Skauge v. Mountain States Tel. & Tel., supra*.

Moreover, as the court expressed in *Oss v. United Services Auto. Ass'n*, 807 F.2d at 460:

"[T]he subrogation clause would not be regarded, even by a careful and intelligent reader, as qualifying the basic promise to pay, and to give it that effect is to enforce provisions drafted by the insurer that are inherently deceptive." This is good reason for holding that the "[subrogation] clause must be subordinated to the basic insurance promise" and that the insurer should not "recover sums received by the insured from the tort source until the insured has been fully indemnified."

Allowing an insurer to subrogate against an insured's settlement when an insured has not been fully compensated would mean that all the insured's settlement could be applied to a medical payment subrogation claim with nothing left to compensate the insured for excess medical bills or personal injuries. Insurance companies accept premiums in exchange for medical payment coverage and may be obligated to pay medical expenses regardless of their insured's negligence or whether a third-party tort-feasor is liable and, therefore, must pay damages. In addition, there is little empirical substantiation that possible reimbursement through successful subrogation is considered in determining insurance premiums for medical payment coverage. See *Rimes, supra*.

Because the record in Frohlich's case fails to answer the question whether Frohlich has been fully compensated as the

result of the settlement with the Denbestes and Farmers Mutual, there is a genuine issue of material fact concerning compensation for Frohlich's loss from the automobile accident; hence, the court erred by granting summary judgment to Shelter.

Whether Shelter's subrogation right can be enforced against Frohlich requires resolution of factual issues, such as the amount of medical costs incurred by Frohlich and other damages sustained by her. See, *Skauge v. Mountain States Tel. & Tel., supra*; *Oss v. United Services Auto. Ass'n, supra*. Additionally, other factors affecting enforceability of a subrogation right may include the tort-feasor's ability to pay beyond the amount of the subrogor's settlement and whether the settling parties have stipulated that the settlement satisfies all damages sustained by the subrogor. See *Rimes, supra.* If Frohlich's damages, as later determined at the trial level, exceed the amount which she received in settlement of her claim against Denbestes, Frohlich has not been fully compensated for her loss, and, consequently, Shelter is not entitled to any part of the proceeds from settlement of Frohlich's claim against the Denbestes.

## PROPER PARTIES?

Frohlich contends that the trial court erred in ruling that Shelter's claim was properly brought against Frohlich instead of Denbestes and Farmers Mutual. However, Frohlich does not discuss this assignment of error.

"To be considered by an appellate court, an error must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred." *Maack v. School Dist. of Lincoln,* 241 Neb. 847, 861, 491 N.W.2d 341, 350 (1992). Accord, *Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391 (1991); *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989). See, also, Neb. Ct. R. of Prac. 9D(1)d (rev. 1992). Therefore, we do not address Frohlich's third assignment of error.

## WAIVER

Finally, Frohlich contends that by stating that "we will pursue our own subrogation for medical payments against

Farmers Mutual of Nebr.," Shelter waived its right to proceed against Frohlich.

"A waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct." *State v. Kennedy*, 224 Neb. 164, 170, 396 N.W.2d 722, 726 (1986) (execution of child custody agreement was not irrevocable waiver of parental right to custody). Accord, *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993); *Stuhr v. Stuhr*, 240 Neb. 239, 481 N.W.2d 212 (1992); *State v. Clear*, 236 Neb. 648, 463 N.W.2d 581 (1990). Furthermore, "[i]n order to establish a waiver of a legal right, there must be clear, unequivocal, and decisive action of a party showing such a purpose, or acts amounting to estoppel on his part." *Jelsma v. Scottsdale Ins. Co.*, 231 Neb. 657, 665, 437 N.W.2d 778, 785 (1989).

Although Shelter's statement may indicate an intention to proceed against Farmers Mutual, that statement, by itself, cannot be characterized as "clear, unequivocal, and decisive action" constituting a "voluntary and intentional relinquishment" of its right to proceed against Frohlich. Thus, Frohlich's contention that Shelter waived its subrogation right is without merit.

## CONCLUSION

Since the district court erred in granting summary judgment to Shelter, we reverse the judgment of the district court and remand this cause for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

HASTINGS, C.J., not participating.