31 F.3d 709
 John McILHERAN, Conservator for Shirley Parke, a Protected
Person, Plaintiff/Appellant,
v.
LINCOLN NATIONAL LIFE INSURANCE COMPANY, a corporation,
Defendant/Appellee.
LINCOLN NATIONAL LIFE INSURANCE COMPANY, Counter-Claimant/Appellee,
v.
John McILHERAN, Counter-Defendant/Appellant.
 No. 93-3543.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 15, 1994.
Decided Aug. 8, 1994.
 
 David Allan Domina, Omaha, NE, argued (Denise Frost and Cletus Blakeman on the brief), for appellant.
 Gerald Laughlin, Omaha, NE, argued (Cynthia Rismiller, on the brief), for appellee.
 Before WOLLMAN, Circuit Judge, ROSS and JOHN R. GIBSON, Senior Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 In this diversity action involving the enforceability of an insurance policy under Nebraska law, John McIlheran, as conservator for Shirley Parke, appeals from the district court's[1] order granting summary judgment to Lincoln National Life Insurance Company ("Lincoln National"). We affirm.
 
 I.
 
 2
 In December 1990 Parke became disabled as a result of a head-on collision near Fremont, Nebraska. On behalf of Parke, McIlheran filed a negligence action in Nebraska state court against the other driver and his employers. In September 1991 McIlheran settled with the defendants and their insurance companies for $1,720,000, and the Dodge County Court approved the settlement. After McIlheran had paid the expenses incurred in obtaining the settlement, the net recovery totaled $1,147,240. The settlement did not fully compensate Parke for her losses, as the settlement fund will be exhausted by her future medical costs.
 
 
 3
 As an employee of the Fremont public schools, Parke was insured under a group health insurance policy issued by Lincoln National, an Indiana company. Following the settlement, Lincoln National requested reimbursement of $444,245.05 it had paid in medical claims submitted on Parke's behalf. Additionally, Lincoln National refused to pay $47,467.10 in claims for expenses incurred after the settlement but prior to the policy's September 1, 1992, termination date.
 
 
 4
 McIlheran filed a declaratory judgment action against Lincoln National in Nebraska state court, seeking a declaration that he need not reimburse Lincoln National for the $444,245.05 and that Parke is entitled to $47,467.10 for the unpaid claims. Lincoln National counterclaimed for the disputed $444,245.05 and then removed the action to federal court. The district court granted summary judgment in favor of Lincoln National, awarding it $444,245.05, less $148,081.68 for attorney fees.
 
 II.
 
 5
 We will affirm the grant of a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., Cole v. Bone, 993 F.2d 1328, 1331 (8th Cir.1993).
 
 
 6
 Lincoln National's policy, which is governed by Nebraska law, contains a provision entitled Third Party Reimbursement and Subrogation:
 
 
 7
 This provision applies when a third party or its insurer is liable as a result of the negligence ... of the third party for a loss for which medical benefits ... are payable under this policy. If a third party or its insurer is liable for past, present, or future medical ... charges, the following rules will apply.
 
 Reimbursement
 
 8
 1. If the third party makes payment before Lincoln National pays, no benefits will be paid under this policy to the extent of the third party's payment.
 
 
 9
 2. If the third party does not make payment before Lincoln National pays:
 
 
 10
 a. Lincoln National will pay any benefits due under this policy;
 
 
 11
 b. when payment is later made by the third party, Lincoln National in entitled to be repaid first; the Insured Individual or legal representative is obligated to return the payment to Lincoln National less reasonable prorated expenses, such as lawyer's fees and court costs, the Insured Individual incurs in seeking the third party payment;
 
 
 12
 c. the Insured Individual's obligation to repay Lincoln National will be binding upon the Insured Individual or legal representative regardless of whether:
 
 
 13
 . . . . .4) the Insured Individual has been paid by the third party for all losses sustained or alleged.
 
 Subrogation
 
 14
 ... Lincoln National's recovery from the third party will be limited to the lesser of:
 
 
 15
 1. the amount Lincoln National paid in benefits under this policy ..., or
 
 
 16
 2. the amount recovered from the third party.
 
 
 17
 Lincoln National's recovery will apply whether or not payment has been made by the third party for all of the Insured Individual's losses.
 
 
 18
 (emphasis added).
 
 
 19
 Relying on Shelter Insurance Cos. v. Frohlich, 243 Neb. 111, 498 N.W.2d 74 (1993), McIlheran argues that under Nebraska law an insurance company may not enforce its right of subrogation unless the insured has been completely compensated for her injuries. He therefore contends that Lincoln National's reimbursement-and-subrogation provision violates the law and public policy of Nebraska and consequently is void. We reject his argument, for we disagree with his reading of Frohlich.
 
 
 20
 Frohlich was injured in an automobile accident, and Shelter Insurance Companies ("Shelter") paid her $10,000 in medical benefits. Frohlich then settled with the driver of the other vehicle for $212,500, whereupon Shelter sought to recover from Frohlich the $10,000 pursuant to its policy's subrogation clause. Shelter's policy stated that "[i]n the event of any payment under [the medical-payments coverage] of this policy, the Company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization." Id. at 113, 498 N.W.2d at 76.
 
 
 21
 Addressing the question whether Nebraska law required that an insured be fully compensated before an insurer may exercise its right of subrogation, the Nebraska Supreme Court first stated that "[g]enerally, subrogation is unavailable until the debt owed to a subrogor has been paid in full." Id. at 117, 498 N.W.2d at 78. The court went on to state, however, that "if a contract provides for subrogation on payment of less than the full amount of a debt or loss, partial payment of a debt or loss may be the basis for subrogation." Id. at 117-18, 498 N.W.2d at 78-79. The court noted that almost every appellate court that has considered this issue "has recognized that unless an insurance policy contains a provision to the contrary, an insurer's right to recover under a subrogation clause of an insurance policy requires that the insured must have been fully compensated for the loss covered by the policy." Id. at 121, 498 N.W.2d at 80. The court concluded that "in the absence of a valid contractual provision or statute to the contrary, an insurer may exercise its right of subrogation only when the insured has obtained an amount that exceeds the insured's loss." Id. at 111, 498 N.W.2d at 81. Because the policy in Frohlich contained no contrary provision, the court found that Frohlich was required to be fully compensated before Shelter could exercise its subrogation right.
 
 
 22
 Had the Frohlich court believed that language such as that found in Lincoln National's policy contravenes Nebraska law or its public policy, it would have held that in no case may an insurer subrogate if the insured has not been fully compensated. In the absence of such a holding, we are constrained to conclude that Lincoln National is entitled, as a matter of law, to be reimbursed in the amount of $444,245.05 and is not required to pay the $47,467.10 in unpaid claims.
 
 
 23
 McIlheran argues that the district court should not have granted summary judgment because there is a factual dispute concerning whether Lincoln National waived its right of subrogation. McIlheran asserts that Lincoln National knew that McIlheran was involved in settlement proceedings with the third-party defendants and that any settlement had to be approved by the Dodge County Court. McIlheran contends that Lincoln National waived its subrogation right because it failed, in light of this knowledge, to file a request for notice of the settlement with the court. We disagree. To "establish a waiver of a legal right, there must be clear, unequivocal, and decisive action" showing such a purpose. Jones v. Burr, 223 Neb. 291, 389 N.W.2d 289, 294 (1986). Lincoln National's failure to file a request for notice in no way evidenced an intent to abandon its right of subrogation.
 
 
 24
 The judgment is affirmed.
 
 
 25
 JOHN R. GIBSON, Circuit Judge, dissenting.
 
 
 26
 I respectfully dissent.
 
 
 27
 This diversity case poses the single question of how to properly interpret a decision of the Nebraska Supreme Court, Shelter Ins. Cos. v. Frohlich, 243 Neb. 111, 498 N.W.2d 74 (1993). Our duty is to consider this question of state law de novo, giving the district court decision no deference. See Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). When I do so, I can only conclude that the court has viewed Frohlich too restrictively. The discussion in Frohlich contains language that may be read in two ways. I believe the better interpretation of Frohlich demands that we apply equitable principles to determine if subrogation is appropriate, and that this analysis is essentially a factual one preventing the entry of summary judgment.
 
 
 28
 Frohlich certainly states in part what the court today says it says. It states that if the "contract provides for subrogation on payment of less than the full amount of a debt or loss, partial payment of the debt or loss may be the basis for subrogation." 243 Neb. at 117-18, 498 N.W.2d at 78-79. What is significant, however, is that the court goes on to say: "unless a contract specifically provides otherwise, equitable principles apply even when a subrogation right is based on contract." Id. at 118, 498 N.W.2d at 79 (citations omitted). The Nebraska Supreme Court concludes that "[a]lthough Shelter's subrogation right arises under its insurance policy ... the exact nature and extent of Shelter's subrogation right is determined by the circumstances of Frohlich's settlement and the resulting equities." Id. The court explains its concern:
 
 
 29
 Allowing an insurer to subrogate against an insured's settlement when an insured has not been fully compensated would mean that all the insured's settlement could be applied to a medical payment subrogation claim with nothing left to compensate the insured for excess medical bills or personal injuries. Insurance companies accept premiums in exchange for medical payment coverage and may be obligated to pay medical expenses regardless of their insured's negligence or whether a third-party tort-feasor is liable and, therefore, must pay damages. In addition, there is little empirical substantiation that possible reimbursement through successful subrogation is considered in determining insurance premiums for medical payment coverage.
 
 
 30
 Id. at 123, 498 N.W.2d at 82 (citing Rimes v. State Farm Mut. Auto Ins. Co., 106 Wis.2d 263, 316 N.W.2d 348 (1982)).
 
 
 31
 The court concluded that the record did not answer the question of whether the insured had been fully compensated as the result of the settlement with the tort-feasor's insurer, and thus, a factual issue remained for resolution. Frohlich, 243 Neb. at 123-24, 498 N.W.2d at 82.
 
 
 32
 It is true that the insurance policy in Frohlich did not contain a provision requiring subrogation even if the third-party had not paid all of the insured's damages. On the other hand, the principles announced in Frohlich suggest that subrogation is appropriate, even if the subrogation right arises under a policy, only after an examination of the underlying equities and the circumstances of the settlement. Thus, the policy language alone does not foreclose Park's claim to the funds. As Frohlich repeatedly stresses, the insurer is obligated to provide medical benefits to the insured irrespective of whether the insured or a third-party caused the injuries. 243 Neb. at 122-25, 498 N.W.2d at 81-82. In addition, Park argues with great force that Nebraska law does not permit an insurer to subrogate against its own insured.
 
 
 33
 Finally, when the circumstances of this settlement are considered, the record shows that Lincoln National's counsel kept in close touch with Park's counsel, knew that Park was conducting settlement negotiations, and yet took no steps to preserve its interest. See Neb.Rev.Stat. Sec. 30-2635. These circumstances are such that there is a question of fact as to whether Lincoln National waived or is estopped from asserting its subrogation claim. See Jelsma v. Scottsdale Ins. Co., 231 Neb. 657, 437 N.W.2d 778, 785 (1989).
 
 
 34
 For these reasons, I would reverse the order granting summary judgment and remand to the district court for trial on the factual issues presented in this case.
 
 
 
 [1]
 The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska