John M. WATSON and Sandy Watson, Administrators of the Estate of John McClay Watson, Deceased, and John M. Watson and Sandy Watson, Individually and as the Representatives of the Class of Individuals who are Holders of Allstate Insurance Policies Containing Policy Language Substantially Similar to the Plaintiffs' Policy, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

No. 4:CV–98–1156.

United States District Court, M.D. Pennsylvania.

Dec. 10, 1998.

James R. Ronca, Schmidt & Ronca, P.C., Harrisburg, PA, for plaintiffs.

Norbert F. Bergholtz, Eric M. Schweiker, Arthur H. Rainer, Dechert Price & Rhoads, Philadelphia, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On June 5, 1998, plaintiffs John M. Watson and Sandy Watson, individually, as represen-

tatives of the estate of John McClay Watson, deceased, and as representatives of a class of individuals holding policies substantially similar to that of plaintiffs, commenced this action with the filing of a complaint in the Court of Common Pleas of Lackawanna County, Pennsylvania. The action was removed to this court by notice of removal filed by defendant Allstate Insurance Co. on July 20, 1998. The motion for certification of the class action has been deferred pending resolution of a motion to dismiss the complaint.

The complaint alleges that Allstate acted in bad faith by refusing to settle plaintiffs' claims for bodily injury and underinsured motorist (UIM) coverage without the execution of releases by plaintiffs to which plaintiffs objected.

Before the court is Allstate's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6).

*DISCUSSION:*

### I. STANDARD

A motion to dismiss under Rule 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The complaint must be construed in favor of the plaintiff with every doubt resolved in the plaintiff's favor. *In re Arthur Treacher's Franchise Litigation*, 92 F.R.D. 398, 422 (E.D.Pa.1981). That is, the court must accept as true all factual allegations set forth in the complaint as well as all reasonable inferences that can be drawn from them. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). The court looks only to the facts alleged in the complaint and any attachments, without reference to any other parts of the record. *Jordan* at 1261. "[A] case should not be dismissed unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.* (citing, *inter alia, Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Whether a plaintiff will ultimately prevail is not a consideration for review of a motion under Rule 12(b)(6). *Nami* at 65.

### II. STATEMENT OF FACTS

According to the complaint, plaintiffs' decedent and Charles Swartz were involved in a motor vehicle accident in Lackawanna County on June 16, 1997. Decedent was pronounced dead as a result of the accident on June 17, 1997. At the time of the accident, Swartz was insured by an Allstate policy with bodily injury limits of $15,000.00 per person. At some time prior to January 16, 1998, Allstate offered to plaintiffs the policy limits in settlement of liability claims.

Plaintiffs also were insured by an Allstate policy which had "stackable" UIM coverage limits of $300,000.00. At some time prior to January 16, 1998, an Allstate representative informed plaintiffs that Allstate would provide an attorney for them.

On January 16, 1998, plaintiffs received five documents for review and signature, including:

 (a) a petition for court approval of a settlement against Allstate;

 (b) a general release discharging Allstate with respect to the UIM claim;

 (c) a petition for court approval of a settlement against Charles Swartz;

 (d) a joint tortfeasor release agreement with respect to the bodily injury claim; and

 (e) a praecipe for discontinuance of both cases.

The joint tortfeasor release noted in (d) was a pro rata joint tortfeasor release which would have the effect of releasing all claims for damages against both Allstate and Swartz.

On January 16, 1998, an attorney for Allstate sent to plaintiffs a new release form for review and signature, which replaced the prior release form related to the UIM claim, designated (b) above. The new release was captioned, Receipt, Release, and Trust Agreement under Underinsured Motorist Coverage–Coverage SU, and provided in part:

The Trustee agrees to take, through any representative designated by the Beneficiary, such action as may be necessary or appropriate to recover the damages suffered by the Trustee from any person or persons, organization, association or corporation other than the Beneficiary who may be legally liable therefor, such action to be taken in the name of the Trustee, the Beneficiary to pay all costs and expense in connection therewith. It is further agreed that any monies recovered by the Trustee as the result of judgment, settlement, or otherwise, will be held in trust by the Trustee and paid to the Beneficiary, provided, however, any sum recovered in excess of the total amount paid by the Beneficiary to the Trustee under the terms of the above-mentioned policy, shall be retained by the Trustee for his own use and benefit.

["Trustee" refers to plaintiffs. "Beneficiary" refers to Allstate.]

In response, plaintiff John Watson wrote to counsel for Allstate and provided revised documents. These included a pro tanto joint tortfeasor release, a proposed petition for court approval of the settlement of the bodily injury claim, and a revised version of the Receipt, Release and Trust Agreement for the UIM claim. Plaintiffs contend that the revision to the latter document is consistent with their Allstate policy, particularly the following:

**Trust Agreement**

When we must pay under this coverage:

1. We are not entitled to repayment until after the person we have paid under this coverage has been compensated for all damages that person was legally entitled to recover. We are entitled to repayment of amounts paid by us and related collection expenses out of the proceeds of any settlement or judgment that person recovers from any responsible party or insurer.

2. All rights of recovery against any responsible party or insurer must be maintained and preserved for our benefit.

3. If we ask, injured persons must take appropriate action in their names to recover damages from any responsible

party or insurer. We will select the attorney and pay all related costs and fees. We will not ask the injured person to sue the insured of any insolvent insurer or any insurer involved in insolvency proceedings.

["We" refers to Allstate.]

Plaintiffs thereafter received a letter from counsel for Allstate indicating that the revised documents did not offer adequate protection for Allstate and therefore were unacceptable. Counsel also indicated that, if plaintiffs found the original documents unacceptable and an agreement could not be reached, the amount offered by Allstate would be paid into escrow for the court to hold pending resolution of the claims.

## III BAD FAITH

An action for bad faith on the part of an insurer is brought under 42 Pa. Cons.Stat. Ann. § 8371. "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Property & Casualty Insurance Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994) (citations omitted), *allocatur denied,* 540 Pa. 641, 659 A.2d 560 (1995)(table). *See also Klinger v. State Farm Mutual Automobile Insurance Co.*, 115 F.3d 230, 233–234 (3d Cir.1997)(predicting that Pennsylvania Supreme Court would adopt test as actually applied in *Terletsky* ). In this instance, of course, the alleged bad faith is in Allstate's refusal to settle unless plaintiffs executed its release forms, and it is that action which we must review for a reasonable basis and a reckless disregard of the lack of a reasonable basis. *See Woody v. State Farm Fire and Casualty Co.*, 965 F.Supp. 691, 694 (E.D.Pa.1997) (trial court may consider acts prohibited under Pennsylvania Unfair Insurance Practices Act, 40 Pa. Stat. Ann. §§ 1171.1 et seq., to evaluate whether insurer's conduct constitutes bad faith); *Romano v. Nationwide Mutual Fire Insurance Co.*, 435 Pa.Super. 545, 646 A.2d 1228 (1994)(same); 40 1171.5(a)(10)(vi),

(xiii)(referring to prompt settlement of claims when insurer's liability is clear).

## IV. SUBROGATION AND "MADE WHOLE" PRINCIPLE

 The focus of the dispute is the right of subrogation and the related "made whole" principle. Subrogation is "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities...." Black's Law Dictionary 1427 (6th ed.1990). In the context of insurance law, the insured must be fully compensated, or "made whole," for injuries suffered before the right of subrogation on the part of the insurer arises. *Wine v. Globe American Casualty Co.*, 917 S.W.2d 558, 562 (Ky.1996). This principle applies in Pennsylvania. *Nationwide Mutual Insurance Co. v. DiTomo*, 330 Pa.Super. 117, 120–121, 478 A.2d 1381, 1383 (1984); *Confer v. Custom Engineering Co. Employee Health Benefit Plan*, 760 F.Supp. 75, 79 (W.D.Pa.) (citing *DiTomo*), *aff'd*, 952 F.2d 41 (3d Cir.1991).

 In this instance, Allstate contends that its release form does not alter the "made whole" principle, and cites a number of cases from jurisdictions other than Pennsylvania to support this argument. If this is so, or at least a reasonable argument may be made that this is so, then Allstate cannot be said to have acted in bad faith. In fact, Allstate's conduct would be entirely reasonable, as it would be protecting itself by using language that has been accepted by the courts but would not be impacting policyholders' rights. The question becomes, then, whether the language recited by Allstate in its form may be reasonably read as not altering the "made whole" principle.

In determining whether Allstate was reasonable in its interpretation of the release language, we look to similar language reviewed by other courts in determining whether there was a contractual alteration of the rights of the parties. While the language of Allstate's release was quoted above, we repeat the language to place it into context, i.e. for comparison:

The Trustee agrees to take, through any representative designated by the Beneficiary, such action as may be necessary or appropriate to recover the damages suffered by the Trustee from any person or persons, organization, association or corporation other than the Beneficiary who may be legally liable therefor, such action to be taken in the name of the Trustee, the Beneficiary to pay all costs and expense in connection therewith. It is further agreed that any monies recovered by the Trustee as the result of judgment, settlement, or otherwise, will be held in trust by the Trustee and paid to the Beneficiary, provided, however, any sum recovered in excess of the total amount paid by the Beneficiary to the Trustee under the terms of the above-mentioned policy, shall be retained by the Trustee for his own use and benefit.

["Trustee" refers to plaintiffs. "Beneficiary" refers to Allstate.]

One court recently reviewed the following language:

A. If [AIG] make[s] a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights and shall do nothing after loss to prejudice them.

B. If [AIG] make[s] a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment.

*AIG Hawaii Insurance Co., Inc. v. Rutledge*, 87 Hawai'i 337, 339, 955 P.2d 1069, 1071 (1998)(brackets in original). The language was interpreted as giving a right of subrogation to the insurer which did not alter the right of the insured to be made whole before the right of subrogation arose. *Id.* at 346, 955 P.2d at 1078.

Another court reviewed the following language:

If we make a payment under this policy and the person to or for whom payment is

made recovers damages from another, that person shall: 1. Hold in trust for us the proceeds of the recovery; and 2. reimburse us to the extent of our payment.

*Duncan v. Integon General Insurance Corp.,* 267 Ga. 646, 646, 482 S.E.2d 325, 326 (1997). This language was not sufficient to alter the operation of the made whole principle (called the "complete compensation rule" in Georgia). *Id.* at 648, 482 S.E.2d at 327.

In another case, the following language was quoted from a policy:

In the event of any payment under Coverage C [Medical Payments] of this policy, the Company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization, and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

*Shelter Insurance Cos. v. Frohlich,* 243 Neb. 111, 113, 498 N.W.2d 74, 76 (1993)(brackets in original).[1] Although the question of whether this language altered the "made whole" principle is not discussed, the court did conclude that the insurer was entitled to enforce its right of subrogation only after the insured had been fully compensated. *Id.* at 123–124, 498 N.W.2d at 82.

The case on which Allstate primarily relies is *Wine.* In that case, the Supreme Court of Kentucky actually was reviewing two provisions, the first a release which read:

Lisa D. Webb, Administrator, assigns and transfers to Motorist all rights and claims Lisa D. Webb, Administratrix, may have against uninsured motorist as a result of this accident.

INSURED agrees to hold in trust for MOTORISTS any money received from UNINSURED MOTORIST.

*Wine* at 564. After noting that assignment did not differ materially from subrogation in this context, the court concluded, "This docu-

ment in no way modified the rights of the parties under the doctrine of subrogation and in no way subordinated the insured's equitable right to full recovery to that of the insurance company." *Id.*

The second provision was from a release which read:

We ... agree to hold any moneys received as a result of settlement or judgment in trust for the company, to be paid to the company immediately upon same coming into my/our hands; provided that any sum received in excess of the amount paid by the company, including legal or other expenses incurred by it in completing the recovery, shall be retained by me/us.

*Id.* at 564–565 (ellipsis in original; emphasis added in *Wine* omitted [2]). The court concluded, "The contractual language clearly and explicitly documents the intent of the parties to: (1) provide Globe with the right of subrogation; (2) permit that right to arise immediately; and (3) thereby subordinate Lisa Webb's interests in any further recovery in favor of Globe until Glove is reimbursed for the payments made." *Id.* at 565.

From these cases, it appears that the general principle that an insurer's right to subrogation does not arise prior to full compensation of the insured is not affected absent clear language to the contrary. Language to the effect that the insurer has a right of subrogation, and that the insured has a duty to hold the proceeds of a settlement or judgment in trust, is insufficient to alter the "made whole" principle. The language must be clear that the insured's right is secondary to the right of the insurer, as by expressly so stating or by making the obligation to pay proceeds "immediately," as in *Wine.*

In this case, the language of the Allstate release does not alter the "made whole" principle. The language is substantially equivalent to the language of cases finding no effect on the insured's right to full compensation. That is, it establishes the right of the insurer

---

1. *Frohlich* also contains a lengthy collection of cases applying the "made whole" principle, using that or similar terms. *Id.* at 121–122, 498 N.W.2d at 80–81.

2. The copy of the opinion reviewed by this court was obtained from a legal database which did not reproduce the emphasis.

to subrogation, to be paid from the proceeds of any settlement or judgment, which the insured is to hold in trust for that purpose. It does *not* say that the insured is not entitled to be made whole, nor does it oblige the insured to make payment to the insurer immediately upon receipt of the funds.

Plaintiffs argue that the language in several of these cases is from insurance policies, not releases. The source of the language is immaterial, as the principles of contract interpretation still apply.

We conclude that the release prepared by Allstate does not alter the "made whole" principle, and therefore Allstate was reasonable in so concluding. Also, since similar language had been found acceptable by courts in various jurisdictions, Allstate was reasonable in insisting on its use.

Plaintiffs also make the separate argument that Allstate's conditioning of the personal injury settlement on the execution of all the forms, including the release and petition related to the UIM coverage, constitutes bad faith. Actually, the letters accompanying the forms do not condition the settlement or any part thereof on the execution of all of the forms. Rather, the forms all were sent together in what appears to be the most convenient manner. We see no basis for a claim of bad faith in these circumstances.

### V. CONCLUSION

Based on the facts alleged in the complaint and the documents appended thereto, we see no basis for a claim of bad faith on the part of Allstate. The language of the disputed release does not alter the operation of the "made whole" principle, and this conclusion is supported by considerable case law. No case law to the contrary is provided by plaintiffs. Allstate cannot be said to have acted in bad faith by insisting on the use of its own release, the validity of which had been established. Moreover, there was no conditioning of the settlement of any part of the case on the settlement of the whole.

Allstate's motion to dismiss will be granted.