Eddy v. Sybert - Rec'd 11/06/02

Rule 23 order filed
 NO. 5-01-0235

November 19, 2002;

Motion to publish granted
 IN THE

January 3, 2003.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

APRIL D. EDDY, ) Appeal from the 

) Circuit Court of 

Plaintiff-Appellant, ) Madison County.

)

v. ) No. 98-L-900

)

FLOY E. SYBERT, ) 

) 

Defendant )

)

(State Farm Insurance Company, ) Honorable 

 ) George J. Moran,

Intervenor-Appellee). ) Judge, presiding.

___________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

April D. Eddy (plaintiff) appeals from an order of the circuit court of Madison County  ordering plaintiff to pay State Farm Insurance Company (State Farm) its entire subrogation lien less attorney fees of one-third for the payment of State Farm's medical-pay lien.  The issue on appeal is whether the trial court erred in awarding State Farm its full subrogation lien, minus a reduction under the fund doctrine, for medical payments made by State Farm under its contract of insurance with plaintiff.  We affirm and remand with directions.

BACKGROUND

Plaintiff and Floy E. Sybert (defendant), who takes no part in this appeal, were involved in an automobile accident on November 14, 1998.  Both plaintiff and defendant were insured by State Farm.  Defendant's policy with State Farm provided for maximum liability limits of $100,000 per person.  Plaintiff's policy with State Farm provided medical-pay coverage in the amount of $25,000.  The terms of the insurance policy issued by State Farm to plaintiff also contained a subrogation clause that allowed State Farm to obtain plaintiff's right to recover against a third party after State Farm paid plaintiff's medical bills.  The subrogation provision provided in pertinent part as follows:

"b.  Under medical payments coverage:

(1)  we are subrogated to the extent of our payment to the right of recovery the injured 
person
 has against any party liable for the 
bodily injury
.

***

(3)  if the 
person
 to or for whom we make payment recovers from any party liable for the 
bodily injury
, that 
person
 shall hold in trust for us the proceeds of the recovery[] and reimburse us to the extent of our payment."  (Emphasis in original.)  

Upon learning of the accident, State Farm sent plaintiff a letter dated November 18, 1998, in which it outlined the rights and obligations of both plaintiff and State Farm.  In the letter, State Farm specifically advised plaintiff that her policy provided for reasonable expenses for necessary medical treatment caused by the accident up to a limit of $25,000 per person and that "[t]he expenses are covered for three years from the date of the accident for bodily injury, provided the injury is discovered and treated within one year of the accident date."  State Farm also advised plaintiff, via the letter, of its subrogation rights and asserted, "We will not subrogate for the amount we have paid if your recovery from the responsible party plus our payments do not exceed your damages."

State Farm asked plaintiff to sign a medical authorization form to allow State Farm to obtain her medical records.  Plaintiff declined to do so, opting instead to allow her attorney to obtain her medical records and bills and forward them to State Farm.  State Farm made payments on behalf of plaintiff and sent letters informing plaintiff of the amounts of medical bills paid on her behalf.  State Farm advised plaintiff that the medical payments made by State Farm on her behalf "are subject to [State Farm's] right to subrogation or reimbursement."

On December 15, 1998, plaintiff filed a lawsuit against defendant.  On September 29, 1999, plaintiff's counsel made a settlement demand by letter for "payment in the range of $160,000."  The parties ultimately agreed to settle for the policy limits of $100,000.  On November 24, 1999, an order was entered, pursuant to a stipulation of the parties, dismissing the case with prejudice.  The order also stated that the trial court retained jurisdiction to resolve lien issues.

The record shows that between December 1, 1998, and July 2, 1999, State Farm paid $19,079.82 of plaintiff's medical bills.  State Farm issued two separate checks to fulfill its payment obligations under the settlement.  One check was in the amount of $12,719.88, made payable to plaintiff, her attorneys, and State Farm.  State Farm refused to endorse the check unless plaintiff agreed to pay the $12,719.88 to State Farm pursuant to its right of subrogation. 

After the settlement, plaintiff discovered that a bill in the amount of $2,985 owed to Dr. Anderson had not been paid.  On February 4, 2000, plaintiff's attorney sent a letter to State Farm requesting the payment of Dr. Anderson's bill.  The letter also explained that the check for $12,719.88 had been placed in an escrow account.  Pursuant to the fund doctrine, plaintiff requested a reduction for future medical bills, estimated at $3,000, and offered State Farm $11,719.88 to settle the subrogation claim.  State Farm responded that it would not pay future medical bills and denied any responsibility for the unpaid $2,985 medical bill on the basis that it had not been made aware of that bill until six months after the case was settled.

On April 5, 2000, plaintiff filed a motion to adjudicate lien, in which she asked the trial court to enter an order "adjudicating the amount of any subrogation claim[,] including a deduction for attorneys fees and unpaid medical bills pursuant to the 'fund doctrine.' "  On October 12, 2000, State Farm filed a response to plaintiff's motion to adjudicate lien.  State Farm claimed a lien for medical payments made under plaintiff's automobile policy for $19,079.88 and agreed to allow plaintiff a reduction of one-third of that total under the fund doctrine pursuant to 
Baier v. State Farm Insurance Co.
, 66 Ill. 2d 119, 361 N.E.2d 1100 (1977).  However, State Farm claimed that it had no duty to pay future medical bills or a bill submitted after a claim was settled, "because by settling[,] [p]laintiff destroys any right of subrogation that State Farm may have."  State Farm claimed that it did not have Dr. Anderson's bill until February 4, 2000.  

In response, plaintiff submitted Dr. Anderson's affidavit, in which he claimed: "[O]n or about November 19, 1998, Dr. Peter J. Anderson issued a physician's lien to State Farm which notified State Farm Insurance that Illinois SW Orthopedics, Ltd.[,] asserted a lien for treatment, care, physician's services[,] and maintenance upon any and all claims and causes of actions which April Eddy may assert against any persons for damages on account of personal injuries alleged to have been received in an accident that occurred on or about 11/14/98.  The physician's lien letter notified State Farm that the amount of lien was the balance at the time of settlement."  Dr. Anderson attached a copy of the lien letter, as well as the receipt for the lien letter signed by an agent for State Farm.  Dr. Anderson further set forth in the affidavit that a member of his staff called State Farm on May 24, 1999, and informed State Farm that medical charges for the services of Dr. Anderson remained unpaid and that, prior to the telephone call, the bills had been sent to State Farm.  Plaintiff asserted that a balance of $2,985 remained.  

State Farm introduced evidence that it paid $19,079.82 in medical bills for plaintiff under the medical-pay provision in her policy.  On January 4, 2001, the trial court entered an order awarding State Farm its entire subrogation lien amount of $19,079.82, less one-third for attorney fees under the fund doctrine.  Accordingly, plaintiff was ordered to pay State Farm $12,719.88.  Plaintiff then filed a motion to reconsider and/or clarify its order, which the trial court denied on March 21, 2001.  The trial court's order contained no language concerning the unpaid medical bill submitted by Dr. Anderson.  Plaintiff now appeals.

ANALYSIS

The issue on appeal is whether the trial court erred in awarding State Farm its full subrogation lien, minus a reduction under the fund doctrine, for medical payments made by State Farm under its contract of insurance with plaintiff.  Plaintiff contends that the contract language is ambiguous and that any ambiguity must be resolved in her favor.  She further contends that she was not fully compensated for her damages and that, thus, State Farm should not be allowed to recoup its medical payments from the settlement.  Plaintiff also contends that the trial court failed to consider the equities involved in this case.  We disagree.

Subrogation rights originated in equity but now arise by both statute and contract.  
In re Estate of Scott
, 208 Ill. App. 3d 846, 848, 567 N.E.2d 605, 606 (1991).  Where the right is created by an enforceable subrogation clause in a contract, contract terms, not the common law or equitable principles, apply.  
Capitol Indemnity Corp. v. Strike Zone, S.S.B. & B. Corp.
, 269 Ill. App. 3d 594, 596, 646 N.E.2d 310, 312 (1995).  The construction of an insurance policy is a question of law subject to 
de novo
 review.  
State Farm Mutual Automobile Insurance Co. v. Villicana
, 181 Ill. 2d 436, 441, 692 N.E.2d 1196, 1199 (1998).  Ambiguous language in an insurance policy should be construed against the drafter.  
Katz v. American Family Insurance Co.
, 163 Ill. App. 3d 549, 552, 516 N.E.2d 795, 796 (1987).  Where the terms in a policy are clear and unambiguous, they must be given their plain and ordinary meaning.  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997).  

In the instant case, the language in plaintiff's contract clearly states that if plaintiff recovers from any party liable for bodily injury, State Farm obtains plaintiff's right to recover against that third party.  Here, it is the unambiguous contract language that controls, not the language of the letter or equitable considerations.  Nevertheless, plaintiff insists that the letter State Farm sent to plaintiff concerning medical subrogation should be construed as saying that if the plaintiff did not recover 
all her damages
, State Farm would not pursue its subrogation within the context of the medical-pay provisions.  Even assuming, 
arguendo
, that the letter controls, we disagree with plaintiff's construction of the language contained in the letter.  Our review of that language indicates that the letter informs plaintiff that if she did not recover 
her medical damages
, subrogation would not be pursued.  State Farm would not be concerned about a recovery above and beyond its own limits of liability under plaintiff's policy.  Here, plaintiff settled for defendant's policy limits of $100,000, well in excess of the $19,079.82 paid by State Farm under the medical-pay provision of its contract with plaintiff.

Plaintiff also contends that she was not made whole by the underlying settlement and, thus, that there should be no right to subrogation.  Plaintiff relies on cases from foreign jurisdictions in support of this argument.  Plaintiff has not cited any Illinois cases, nor have we found any, that hold that there is no right to subrogation unless the plaintiff was made whole by the underlying settlement.  Such a ruling would run contrary to our state's policy encouraging the settlement of cases.  We find this case similar to 
Gibson v. Country Mutual Insurance Co.
, 193 Ill. App. 3d 87, 549 N.E.2d 23 (1990).  Plaintiff's attempt to distinguish 
Gibson
 is unpersuasive.

In 
Gibson
, like the instant case, the plaintiff recovered medical payments under her own insurance policy and then negotiated a settlement with the driver who was at fault and insured by the same insurance company as the plaintiff.  The plaintiff attempted to prevent her insurance company from enforcing subrogation and reimbursement provisions in her policy to recover the medical payments it paid her from the settlement she received from the at-fault driver.  The plaintiff argued that the enforcement of the subrogation and reimbursement provisions in her policy violated public policy because she had not been fully compensated for her damages.  
Gibson
, 193 Ill. App. 3d at 89-91, 549 N.E.2d at 25-26.  The 
Gibson
 court rejected this argument and allowed the insurance company to recover the medical payments from the plaintiff's settlement with the at-fault driver.  
Gibson
, 193 Ill. App. 3d at 90-92, 549 N.E.2d at 25-26.  Thus, 
Gibson
 declined to follow the made-whole doctrine that has been adopted by other jurisdictions.

Plaintiff also argues that even if State Farm has a valid right of subrogation, it cannot exercise that right because State Farm failed to pay all of plaintiff's medical bills.  We recognize that an insurance company may not exercise its right of subrogation until it has paid the insured's damages under the policy giving rise to the subrogation rights (
Benge v. State Farm Mutual Automobile Insurance Co.
, 297 Ill. App. 3d 1062, 1072, 697 N.E.2d 914, 921 (1998)); however, the facts in the instant case do not trigger that rule.  Here, State Farm did not refuse to pay all of plaintiff's medical bills.  The only bill that was not paid was a $2,985 bill submitted by Dr. Anderson.  State Farm insists that it was not made aware of this bill until six months after the case settled and that, therefore, it was under no obligation to pay the bill.  Plaintiff, on the other hand, insists that State Farm should have been aware of Dr. Anderson's bill and was obligated to pay it under the medical-pay provision of its policy with plaintiff. 

Dr. Anderson's affidavit reveals that State Farm was put on notice of the bill after Dr. Anderson's office sent State Farm a notice of his lien within four days of the accident and later called State Farm about the outstanding bill.  The trial court's order fails to mention this unpaid medical bill.  We note that even after paying this bill, State Farm will not have paid in excess of plaintiff's $25,000 limit of liability under the medical-pay provision of her policy.  Therefore, we find that State Farm is liable for the bill under plaintiff's medical-pay provision but that it can subrogate this claim under the liability coverage in defendant's policy.  State Farm is entitled to reimbursement from the proceeds of the settlement with defendant, minus a reduction of one-third under the fund doctrine.  Plaintiff, however, fails to convince us that State Farm was required to pay future medical bills.  

For the foregoing reasons, we hereby affirm the order of the circuit court of Madison County ordering plaintiff to pay State Farm its full subrogation lien, minus a one-third reduction under the fund doctrine.  Additionally, pursuant to our powers under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we hereby amend the judgment to order State Farm to pay Dr. Anderson's medical bill of $2,985 under the medical-pay provision of plaintiff's policy, and we further order plaintiff to reimburse State Farm for that bill, less one-third under the fund doctrine in the amount of $995.33.

Affirmed as modified.

HOPKINS, P.J., and KUEHN, J., concur.

                                      NO. 5-01-0235

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

APRIL D. EDDY, ) Appeal from the 

) Circuit Court of 

Plaintiff-Appellant, ) Madison County.

)

v. ) No. 98-L-900

)

FLOY E. SYBERT, ) 

) 

Defendant )

)

(State Farm Insurance Company, ) Honorable 

 ) George J. Moran,

Intervenor-Appellee). ) Judge, presiding.

___________________________________________________________________________________

Rule 23 order filed
: November 19, 2002

Motion to Publish Granted
: January 3, 2003

Opinion Filed
: January 3, 2003

___________________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Terrence J. Hopkins, P.J., and

Honorable Clyde L. Kuehn, J.,

Concur

___________________________________________________________________________________

Attorney
 Brian M. Wendler, Wendler & Ezra, P.C., 4955 South State Route 159, Glen

for
 Carbon, IL 62034

Appellant
 

___________________________________________________________________________________

Attorney
 Jane Unsell, Unsell, Schattnik & Juen, 55 South 9th Street, East Alton, IL 62024

for
 

Appellee
 

___________________________________________________________________________________