Tracy Jensen, appellee, v. Board of Regents of the University of Nebraska, a body politic of the State of Nebraska, et al., appellees, and North American Specialty Insurance Company, appellant.

684 N.W.2d 537

Filed August 6, 2004.   No. S-02-1459.

Robert T. Grimit and Randall L. Goyette, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., and Gregory D. Seeley and Eric D. Baker, of Seeley, Savidge & Ebert Co., L.P.A., for appellant.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for appellee Tracy Jensen.

Andrew B. Koszewski and Melanie J. Whittamore-Mantzios, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee TIG Insurance Company.

HENDRY, C.J., CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

North American Specialty Insurance Company (NASIC) appeals from an order of the district court for Lancaster County denying its motion for summary judgment and granting Tracy Jensen's motion for summary judgment. NASIC argues that it is entitled to subrogation and also raises an issue requiring interpretation of a policy it issued providing benefits to Jensen. We affirm.

## BACKGROUND

While attending the University of Nebraska-Lincoln, Jensen was a member of the university's spirit squad. On December 4, 1996, Jensen suffered a severe spinal cord injury while attempting a tumbling maneuver during a cheerleading practice. She was initially paralyzed from the neck down, but during her rehabilitation, she regained limited use of all four limbs. Despite the improvements Jensen made in the months following her accident, she continues to experience significant physical and psychological difficulties as a result of her accident. Her condition is not expected to improve in the future.

Jensen's accident implicated three insurance policies. The one at issue in this appeal is a policy issued by NASIC to the National Collegiate Athletic Association (NCAA) for the benefit of student-athletes attending NCAA member institutions, including the University of Nebraska-Lincoln. The NASIC policy was an excess policy, and section III of the policy, entitled "OTHER INSURANCE — EXCESS NATURE OF POLICY," specifically provided:

> Except as provided below, this insurance Policy is excess over any other valid and collectible insurance available to the Insured Person for a Covered Loss under this Policy. If an Insured Person receives or is entitled to receive benefits

or services from any source described below (herein called Other Insurance) for any benefit category of a Covered Loss for which he or she is entitled under this Policy, such benefit under this Policy will be in excess of the amount of such Other Insurance.

If an Insured Person is entitled to Other Insurance for a benefit category of a Covered Loss for which he or she has been paid benefits under this Policy, the Insured Person will reimburse the Company to the extent of such benefits paid under this Policy, not to exceed the amount of Other Insurance received.

. . . .

"Other Insurance" means any reimbursement for or recovery of any element of Covered Loss available from any other source whatsoever, except gifts and donations, but including without limitation:

a. any individual, group, blanket, or franchise policy of accident, disability, or health insurance;

b. any arrangement of benefits for members of a group, whether insured or uninsured;

c. any prepaid service arrangement such as Blue Cross or Blue Shield, individual or group practice plans, or health maintenance organizations;

d. any amount payable for hospital, medical, or other health services for accidental bodily injury arising out of a motor vehicle accident to the extent such benefits are payable under any medical expense payment provision (by whatever terminology used including such benefits mandated by law) of any motor vehicle insurance policy;

e. any amount payable for services for injuries or diseases related to the Insured Person's job to the extent that he [or she] actually receives benefits under a Worker's Compensation law. If the Insured Person enters into a settlement to give up his or her rights to recover future medical expenses under a Worker's Compensation Law, this Policy will not pay those medical expenses that would have been payable except for that settlement;

f. Social Security Disability Benefits, except that Other Insurance shall not include any increase in Social Security

Disability Benefits payable to an Insured Person after he or she becomes disabled while insured hereunder;

    g. any benefits payable under any program provided or sponsored solely or primarily by any governmental agency or subdivision or through operation of law or regulation.

Jensen was also insured under a policy issued by TIG Insurance Company (TIG) to the University of Nebraska and a policy issued by Celtic Insurance Company (Celtic) to Jensen's parents.

Following her accident, Jensen filed a negligence action against the Board of Regents of the University of Nebraska (Board of Regents). In April 2001, Jensen settled her claim with the Board of Regents for $2.1 million. Under the terms of the settlement agreement, the Board of Regents agreed to pay Jensen a lump sum of $600,000 followed by annual payments of $150,000 for 10 years. Also included were a $40,000 payment for vocational rehabilitation services not covered by NASIC or TIG and a future tuition waiver for Jensen to complete her degree.

Jensen's operative petition in this action also named NASIC, TIG, and Celtic as defendants. Jensen alleged that she had received notice from NASIC of its intention to invoke section III of the NASIC policy and demand subrogation and reimbursement as well as to refuse future coverage of expenses. Thus, Jensen sought a declaration that she was not obligated to reimburse or subrogate NASIC for benefits paid under any of the policies and that the settlement funds Jensen received from the Board of Regents are not "Other Insurance" as defined in section III of the NASIC policy. Jensen sought similar relief with respect to both TIG and Celtic. NASIC filed a counterclaim in which it sought declaratory relief. Specifically, NASIC sought a declaration that "Other Insurance" includes the settlement funds Jensen received from the Board of Regents, that NASIC is entitled to reimbursement by Jensen to the extent of benefits it already paid to Jensen, and that it has no further obligation to pay benefits under the policy.

Jensen moved for summary judgment against NASIC, TIG, and Celtic. NASIC filed its own motion for summary judgment against Jensen. The district court found that NASIC, TIG, and Celtic are not entitled to subrogation because Jensen was not fully compensated for her injuries by her settlement with the Board of

Regents. The court also found that NASIC's definition of "Other Insurance" was ambiguous. Accordingly, the court construed that term in Jensen's favor and found that the settlement funds did not constitute "Other Insurance." NASIC appealed, and we moved the case to our docket.

## ASSIGNMENTS OF ERROR

NASIC assigns that the district court erred in (1) finding that NASIC was not entitled to subrogation of the settlement funds received by Jensen from the university; (2) finding that the settlement funds did not fully compensate Jensen for her injuries; (3) finding that the settlement funds did not constitute "Other Insurance" under the policy issued by NASIC; (4) finding that the policy issued by NASIC, including the definition of "Other Insurance," was ambiguous; (5) sustaining Jensen's motion for summary judgment; and (6) denying NASIC's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn.*, 267 Neb. 158, 673 N.W.2d 15 (2004).

## ANALYSIS

### SUBROGATION

Subrogation involves a substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies, or securities. *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997). In the context of insurance, the right to subrogation is based on two premises: (1) A wrongdoer should reimburse an insurer for payments that the insurer has made to its insured, and (2) an insured should not be allowed to recover twice from the insured's insurer and the tort-feasor. *Id.*

Under principles of equity, an insurer is entitled to subrogation only when the insured has received, or would receive, a double payment by virtue of an insured's recovering payment of all or part of those same damages from the tort-feasor. *Id.*; *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993). Thus, we have stated that " ' "[t]he insurer should not 'recover sums received by the insured from the tort source until the insured has been fully indemnified.' " ' " *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. at 372, 570 N.W.2d at 712, quoting *Shelter Ins. Cos. v. Frohlich, supra.*

NASIC readily concedes that whether it is entitled to subrogation depends on whether Jensen has been fully compensated for her loss. However, NASIC argues that there is a factual dispute as to whether Jensen has been fully compensated which precludes summary judgment in Jensen's favor. At summary judgment, NASIC offered evidence that it has paid a total of over $51,000 for Jensen's home health care from 1996 to 2002. NASIC then points to the life care plan offered by Jensen into evidence which estimates her future home health care expenses to be more than $157,000 per year, beginning at age 24, which age Jensen attained in February 2000. Based on the discrepancy between what it has paid for Jensen's home health care and what those expenses will be in the future, NASIC argues that there is a factual dispute as to the amount it would take to compensate Jensen for her injuries and that therefore, it was inappropriate to conclude as a matter of law that Jensen was not fully compensated.

We are not persuaded. NASIC's argument misses the fact that there is no inherent contradiction in what Jensen's past expenses for the years 1996 to 2002 are and what her expenses will be for the rest of her life. In support of her motion for summary judgment, Jensen offered the life care plan that estimated the present value of her economic losses to be $8,594,978. NASIC offered no evidence disputing the life care plan's estimate of Jensen's expenses for the rest of her life. This amount was far more than what she has received from NASIC and an amount far more than the amount she settled for with the university. Nor did NASIC actually contradict the life care plan's estimate for her home health care expenses during the 1996 to 2002 time period. This is because (1) the life care plan estimate only began estimating

her expenses for 2000 and beyond and (2) while NASIC presented evidence of what it has paid from 1996 to 2002, the record does not indicate that NASIC is the only entity that has paid Jensen's home health care expenses during that time. Finally, NASIC argues that the mere fact that Jensen reached a settlement with the university indicates that she was fully compensated for her injuries; otherwise, she would not have accepted the settlement agreement. NASIC is no doubt aware of the risks involved in litigation and the benefits of sometimes settling disputes prior to trial. To say as a matter of law that any party who accepts a settlement is necessarily fully compensated is folly. For all of these reasons, it is apparent as a matter of law that Jensen has not come close to being fully compensated for her loss. Under the rule of *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997), NASIC is not entitled to subrogation.

## "OTHER INSURANCE"

NASIC also argues that the settlement funds Jensen received from the university are "Other Insurance" under section III of the NASIC policy. NASIC claims, therefore, that it is entitled to reimbursement of the funds Jensen has already received from the university and is excused from providing coverage to Jensen until the settlement funds are exhausted. The district court found that NASIC's policy, particularly its definition of "Other Insurance," was ambiguous and thus construed that term in favor of Jensen. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Wood v. Wood*, 266 Neb. 580, 667 N.W.2d 235 (2003). An ambiguous insurance policy will be construed in favor of the insured. *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003). Whether the language in an insurance policy is ambiguous presents a question of law. *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004).

The policy defined "Other Insurance" as "any reimbursement for or recovery of any element of Covered Loss available from *any other source whatsoever*, except gifts and donations." (Emphasis supplied.) The definition then goes on to include seven

specific sources—all of which are traditional forms of insurance, as the term "insurance" is typically understood. See, e.g., Neb. Rev. Stat. § 44-102 (Reissue 1998) (defining "insurance" under chapter 44 of the Nebraska Revised Statutes). NASIC argues that the broad definition of "Other Insurance" as recovery from any source whatsoever captures the settlement funds Jensen received from the university.

Jensen argues that the term is ambiguous. To reach that conclusion, she primarily relies on the doctrine of ejusdem generis. Under the ejusdem generis rule, specific words or terms modify and restrict the interpretation of general words or terms where both are used in sequence. *Dykes v. Scotts Bluff Cty. Ag. Socy.*, 260 Neb. 375, 617 N.W.2d 817 (2000). Applied in this context, our interpretation of the broad, general definition "any other source whatsoever" is modified by the specific words and terms surrounding it, notably, the specific term "Other Insurance" and the seven specific examples of "Other Insurance," all of which bear the traditional characteristics of insurance. Thus, NASIC's general description of "Other Insurance" as including recovery from any source whatsoever is restricted to include only recovery from any form of *insurance*. Jensen's settlement with the university bears none of the traditional characteristics of insurance. We conclude that the term "Other Insurance" is susceptible to two reasonable but conflicting interpretations. We construe the term in favor of Jensen and conclude that "Other Insurance" under section III of the NASIC policy does not include the settlement funds Jensen received from the university.

## CONCLUSION

We conclude as a matter of law that NASIC is not entitled to subrogation because Jensen's settlement with the university did not fully compensate her for her loss. We further conclude that the settlement funds are not "Other Insurance" under section III of the NASIC policy. Accordingly, we affirm.

AFFIRMED.

WRIGHT and STEPHAN, JJ., not participating.