BLUE CROSS AND BLUE SHIELD OF NEBRASKA, INC., APPELLEE AND CROSS-APPELLANT, V. LEMOYNE E. DAILEY, APPELLANT AND CROSS-APPELLEE, AND UNION PACIFIC RAILROAD COMPANY, APPELLEE AND CROSS-APPELLEE.

687 N.W.2d 689

Filed October 22, 2004.   No. S-03-394.

■■■■■■■

■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■

■■■■■■■■■■

Todd R. McWha and Keith A. Harvat, of Waite, McWha & Harvat, for appellant.

John F. Thomas and Michael T. Eversden, of McGrath, North, Mullin & Kratz, P.C., for appellee Blue Cross and Blue Shield of Nebraska, Inc.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Blue Cross and Blue Shield of Nebraska, Inc. (Blue Cross), sued Lemoyne E. Dailey, who was insured by Blue Cross, and the Union Pacific Railroad Company (Union Pacific). Blue Cross sought reimbursement of medical payments it had made on behalf of Dailey due to the alleged negligence of Union Pacific. The Douglas County District Court sustained Blue Cross' motion for summary judgment and overruled the motions for summary judgment filed by Dailey and Union Pacific. Dailey appeals, and Blue Cross cross-appeals.

## SCOPE OF REVIEW

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004).

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Mogensen v. Board of Supervisors, ante* p. 26, 679 N.W.2d 413 (2004).

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is

entitled to judgment as a matter of law. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## FACTS

On February 9, 1999, a prairie fire occurred in Lincoln County, Nebraska. The fire was allegedly caused by sparks emitting from a Union Pacific train. While attempting to put out the fire, Dailey incurred second- and third-degree burns over a significant portion of his body. He required extensive treatment in a hospital burn unit for a number of months.

In December 1999, Dailey entered into a settlement with Union Pacific. He signed a release and settlement agreement which provided that Union Pacific was released from liability for all claims for injuries, including those unknown at the time the document was signed. Union Pacific agreed to pay a lump sum of $1,225,000 to Dailey and $10,000 per month for 10 years or the remainder of his life, beginning February 1, 2000. The agreement stated that "if Blue Cross . . . is subrogated under any rights whatsoever against [Dailey, then Union Pacific] will negotiate the subrogation lien of Blue Cross" and pay all costs and attorney fees incurred by Dailey.

Blue Cross sued Dailey and Union Pacific for recovery of the medical expenses it had paid on behalf of Dailey. Blue Cross alleged two theories of recovery: subrogation and contractual right of recovery. On the subrogation claim, Blue Cross alleged that it had paid $794,329.08 in medical expenses under an insurance contract with the Nebraska Association of County Officials that covered Dailey. The petition asserted that Blue Cross had made demand on Union Pacific for $720,000 as settlement for the medical bills incurred by Dailey and that the demand was not accepted. Blue Cross asked for judgment against Union Pacific in the full amount of its expenses.

As to the contractual right of recovery claim, Blue Cross alleged that Dailey and Union Pacific had entered into a settlement of Dailey's claims against the railroad under which he was

to receive payments from Union Pacific for his injuries. Blue Cross claimed that pursuant to its contract with the Nebraska Association of County Officials, Blue Cross had a contractual right to collect from the proceeds Dailey recovered for his injuries the amount of medical benefits it had paid on Dailey's behalf, regardless of whether Dailey had been fully compensated. Blue Cross asserted that either Dailey or Union Pacific was obligated to reimburse Blue Cross for the medical expenses it had paid for the treatment of Dailey's injuries.

In his answer, Dailey also asserted a cross-claim against Union Pacific. Union Pacific filed an answer to Blue Cross' petition, in which it asserted a number of affirmative defenses.

The district court granted Blue Cross' motion to bifurcate, agreeing to first hear the contractual right of recovery claim, which, if resolved in favor of Blue Cross, would eliminate the need for the subrogation action against Union Pacific.

The district court subsequently granted Blue Cross' motion for summary judgment and entered judgment against Dailey for $801,485.70. The order overruled the motions for summary judgment filed by Dailey and Union Pacific. The court deferred action as to the enforcement of rights between Dailey and Union Pacific and as to Blue Cross' claim under Dailey's indemnity agreement with Union Pacific.

The district court found that the subrogation provision of the insurance policy allowed Blue Cross to recover regardless of whether the insured had been made whole and that the policy created a contractual right that was different from Blue Cross' equitable right to subrogation. The court concluded that the subrogation provision did not violate public policy, the subrogation provision was not void as a unilateral amendment, there was no conflict of interest in the insurance policy, the policy was not an unconscionable contract of adhesion, and there was no lack of consideration in the policy. The court also found that the "made whole" doctrine of equitable subrogation did not apply because the subrogation provision was a distinct contractual undertaking that was more than a mere restatement of Blue Cross' equitable rights.

Blue Cross' motion for prejudgment interest was denied, and the district court filed a second order, stating that its previous

order granting summary judgment to Blue Cross was "amended" to reflect that it was "the entry of a final judgment and [that] there is no just reason for delay in the entry of that order." Dailey timely appealed, and Blue Cross cross-appeals.

## ASSIGNMENTS OF ERROR

Dailey assigns the following restated errors: (1) The district court erred in determining that Blue Cross is entitled to full recovery of all medical expenses that it paid on behalf of Dailey, despite the fact that he was not made whole, and (2) the court erred in sustaining Blue Cross' motion for summary judgment and denying Dailey's motion for summary judgment.

On cross-appeal, Blue Cross assigns as error the district court's failure to award Blue Cross prejudgment interest.

## JURISDICTION

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004). Blue Cross asserts that we do not have jurisdiction over this appeal because the order from which Dailey appeals is not a final order under Neb. Rev. Stat. § 25-1315 (Cum. Supp. 2002). Dailey responds that the district court amended its original order to make it clear that the judgment was final pursuant to § 25-1315.

Section 25-1315(1) states in relevant part:

[W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001), we noted that a claim for relief under § 25-1315(1) is equivalent to a separate cause of action, not a separate theory of recovery. Therefore, the statute "is implicated only where multiple causes of action are presented or multiple parties are involved, and a final judgment is entered as to one of the parties or causes of action." *Keef*, 262 Neb. at 627-28, 634 N.W.2d at 757.

More recently, we considered § 25-1315 in *Bailey v. Lund-Ross Constructors Co.*, 265 Neb. 539, 657 N.W.2d 916

(2003). We noted that § 25-1315(1) is substantially similar to Fed. R. Civ. P. 54(b), and we reviewed federal cases for guidance.

> We therefore determine that for purposes of Nebraska law, the term "final judgment" as used in § 25-1315(1) is the functional equivalent of a "final order" within the meaning of Neb. Rev. Stat. § 25-1902 (Reissue 1995). Thus, a "final order" is a prerequisite to an appellate court's obtaining jurisdiction of an appeal initiated pursuant to § 25-1315(1). . . . With the enactment of § 25-1315(1), one may bring an appeal pursuant to such section only when (1) multiple causes of action or multiple parties are present, (2) the court enters a "final order" within the meaning of § 25-1902 as to one or more but fewer than all of the causes of action or parties, and (3) the trial court expressly directs the entry of such final order and expressly determines that there is no just reason for delay of an immediate appeal.

*Bailey*, 265 Neb. at 546-47, 657 N.W.2d at 923-24.

In the present case, there are multiple parties and the district court's order provided that there was no just reason for delay of an appeal. Thus, we must determine whether the order was a final order pursuant to Neb. Rev. Stat. § 25-1902 (Reissue 1995).

Under § 25-1902, an order is final for purposes of appeal if it affects a substantial right and (1) determines the action and prevents a judgment, (2) is made during a special proceeding, or (3) is made on summary application in an action after judgment is rendered. *Bailey, supra.* This court has stated that "to be final, an order must dispose of the whole merits of the case. When no further action of the court is required to dispose of a pending cause, the order is final. If the cause is retained for further action, the order is interlocutory." *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 507, 557 N.W.2d 696, 701 (1997).

In the case at bar, the district court's order sustained Blue Cross' motion for summary judgment and entered judgment against Dailey. In its conclusion, the court stated: "The enforcement of rights between Dailey and . . . Union Pacific are deferred, as are [Blue Cross'] rights under Dailey's indemnity agreement with Union Pacific." Whether Blue Cross is entitled to recovery under the subrogation provision in the insurance policy

must be determined before consideration of the settlement agreement between Dailey and Union Pacific.

We conclude that the district court's order was a final order because it determined the action as related to Dailey and Blue Cross, and no further action was necessary between those two parties. The order effectively determined that Dailey owed Blue Cross for the expenses it had paid on his behalf. The district court's order satisfied §§ 25-1315(1) and 25-1902 and was a final, appealable order. Therefore, we have jurisdiction over the appeal.

## ANALYSIS

This appeal presents the issue of whether the principles of equitable subrogation can be abrogated by contract. The specific question posed is whether Blue Cross may, because of the contractual provisions in the insurance policy issued to Dailey, bring a subrogation action against him to recover benefits paid under the contract, even if Dailey has not been fully compensated for his injuries. Blue Cross alleges that the insurance policy permits it to collect these benefits regardless of whether there has been full compensation to Dailey.

The insurance policy stated:

A. SUBROGATION: . . . The Employee/Member . . . agrees to make reimbursement under this Part if payment is received for existing claims from the person who caused the Illness or Injury or from that person's liability carrier. This recovery . . . includes any claim by the Covered Person for special or general damages and *regardless of whether or not there has been full compensation.*

B. CONTRACTUAL RIGHT TO RECOVERY: By accepting coverage under this Contract, the Employee/ Member agrees to grant a contractual right to collect from the proceeds recovered on his or her behalf . . . for benefits paid under this Contract, *regardless of whether or not there has been full compensation.*

(Emphasis supplied.)

Subrogation involves a substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies,

or securities. *Jensen v. Board of Regents, ante* p. 512, 684 N.W.2d 537 (2004). Generally, subrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other. *Shelter Ins. Cos. v. Frohlich,* 243 Neb. 111, 498 N.W.2d 74 (1993) (quoting *Chadron Energy Corp. v. First Nat. Bank,* 236 Neb. 173, 459 N.W.2d 718 (1990)). "The preceding applies to subrogation based on a contract, known as conventional subrogation, as well as to subrogation arising by operation of law, that is, legal subrogation." *Frohlich,* 243 Neb. at 117, 498 N.W.2d at 78.

In the context of insurance, the right of subrogation is based on two premises: (1) An insured should not be allowed to recover twice for the same loss, which would be the result if the insured recovers from both the insured's insurer and the tortfeasor, and (2) a wrongdoer should reimburse an insurer for payments that the insurer has made to its insured. *Id.* Under principles of equity, an insurer is entitled to subrogation only when the insured has received, or would receive, a double payment by virtue of an insured's recovering payment of all or part of those same damages from the tort-feasor. *Id.* As this court stated in *Continental Western Ins. Co. v. Swartzendruber,* 253 Neb. 365, 570 N.W.2d 708 (1997) (quoting *Shelter Ins. Cos. v. Frohlich, supra*), an insurer should not recover sums received by the insured from the tort source until the insured has been fully indemnified.

In *Frohlich,* we stated that subrogation clauses should be construed to confirm, but not expand, the equitable subrogation rights of insurers. If either the insurer or the insured must bear any loss, it should be the insurer because the insured has paid the insurer to bear that risk. *Id.* We also stated: "Allowing an insurer to subrogate against an insured's settlement when an insured has not been fully compensated would mean that all the insured's settlement could be applied to a medical payment subrogation claim with nothing left to compensate the insured for excess medical bills or personal injuries." *Id.* at 123, 498 N.W.2d at 82.

The language of the Blue Cross policy in this case allowed subrogation and a right to recovery regardless of whether the insured was fully compensated for his or her loss. Since the policy granted Blue Cross subrogation and recovery rights regardless of

whether the insured has been fully compensated, such provisions represent a deviation from the general rule articulated in *Frohlich.*

In *Frohlich,* 243 Neb. at 113, 498 N.W.2d at 76, a provision in the insurance policy stated, in relevant part, that " '[i]n the event of any payment under Coverage C [Medical Payments] of this policy, the Company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization . . . .' " The insured, who was injured in an automobile accident, received medical payments from the insurance company and reached a settlement with the driver of the other car involved in the accident. The insured contended that the insurer had to prove that she had been fully compensated for her loss before it could recover on the basis of subrogation. The insurer argued that Nebraska law imposed no requirement that an insurer prove that its subrogor had been fully compensated for a loss before the insurer was entitled to subrogation. The district court granted summary judgment to the insurer and ordered the insured to repay the insurer.

We were then asked to determine the enforceability of the insurer's subrogation right and whether the right was conditioned on full compensation of the insured. We stated: "[I]n the absence of a valid contractual provision or statute to the contrary, an insurer may exercise its right of subrogation only when the insured has obtained an amount that exceeds the insured's loss." *Shelter Ins. Cos. v. Frohlich,* 243 Neb. 111, 122, 498 N.W.2d 76, 81 (1993). We reversed the district court's order granting summary judgment to the insurer because the record did not indicate whether the insured had been fully compensated as a result of her settlement. We stated that the insurer's subrogation right could not be enforced without a determination at the trial court level as to whether the insured's damages exceeded the amount she received in compensation for her loss.

Unlike the case at bar, *Frohlich* did not involve a contractual provision that expressly permitted the insurer to subrogate against its insured when the insured had not been fully compensated for his or her loss. Blue Cross relies upon the language in *Frohlich* which suggests that an insurer may override principles

of equitable subrogation by contract. We hold that such language was dicta and is therefore not binding upon this court.

In *Frohlich*, the record failed to establish whether the insured had been fully compensated as the result of the settlement. A genuine issue of material fact existed concerning whether the insured had in fact been fully compensated, and we concluded that the trial court erred in granting summary judgment to the insurer. A case is not authority for any point not necessary to be passed on to decide the case or not specifically raised as an issue addressed by the court. *Pribil v. Koinzan*, 266 Neb. 222, 665 N.W.2d 567 (2003). To the extent that the language in *Frohlich* could be construed to permit conventional subrogation when the insured has not been compensated in full or made whole, it is hereby disapproved.

Although subsequent Nebraska cases have dealt with the issue of whether an insured must be fully compensated before subrogation may occur, they fail to provide guidance on the specific issue currently before the court. *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998), and *Brockhaus v. Lambert*, 259 Neb. 160, 608 N.W.2d 588 (2000), dealt with Neb. Rev. Stat. § 44-3,128.01 (Reissue 1998), which allows an automobile liability policy to contain a provision permitting pro rata subrogation in the situation where the insured did not fully recover his or her loss. As such, the Nebraska Legislature has by statute directed that the rule requiring full compensation before recovery does not apply to a certain group of insurance policies. We are not dealing with such a policy in the case before us, and therefore, these cases are not applicable.

In *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997), we examined the circumstances in which equitable principles control conventional subrogation. We held that "if a contractual right of subrogation is merely the usual equitable right which would have existed in any event in the absence of a contract, equitable principles control subrogation." *Id.* at 370, 570 N.W.2d at 711. The policy in *Swartzendruber* mirrored the usual equitable rights, and accordingly, we held that equitable principles controlled.

We note that a minority of jurisdictions have developed a rule that allows an insurer to be subrogated for any amount that it has

paid to an insured, regardless of whether the insured has been made whole for his or her injuries. See, e.g., *Eddy v. Sybert*, 335 Ill. App. 3d 1136, 783 N.E.2d 106, 270 Ill. Dec. 531 (2003) (automobile insurer's right to subrogation for payment of medical expenses did not depend on whether insured was made whole by insured's settlement with tort-feasor).

Other jurisdictions specifically allow contractual language to abrogate the rule premising recovery upon full compensation. See, *Ex parte Cassidy*, 772 So. 2d 445 (Ala. 2000) (insurer is not entitled to subrogation unless insured has had full recovery, but this rule is superseded by parties' agreement to contrary); *Samura v. Kaiser Foundation Health Plan*, 17 Cal. App. 4th 1284, 22 Cal. Rptr. 2d 20 (1993) (contract provision expressly gave insurer priority to proceeds from tort-feasor without regard to whether insured was first made whole); *Kapadia v. Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848 (Iowa 1988) (conventional subrogation rights are not subject to rule that stays their enforcement until insured is made whole).

However, a different result was reached in *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 266, 316 N.W.2d 348, 350 (1982), wherein an insurer was attempting to enforce a subrogation provision which stated:

> " 'Upon payment . . . the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person . . . may have against any person . . . and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. . . .' "

(Emphasis omitted.) The court stated: "[O]ne who claims subrogation rights, whether under the aegis of either legal or conventional subrogation, is barred from any recovery unless the insured is made whole." *Id.* at 272, 316 N.W.2d at 353.

The *Rimes* court stated that the law of subrogation was based upon equitable principles and that among the purposes of subrogation was the prevention of a double recovery by the insured. However, since an insured does not receive a double recovery until he or she has been made more than whole by damage payments, there can be no double recovery when an insured

has not fully recovered his or her losses. *Id.* Where an insurer seeks subrogation and the insured has not been made whole through his or her recovery, equitable principles necessitate disallowing the insurer to assert its subrogation right. *Id.*

We conclude that the reasoning in *Rimes* is consistent with the principles of equitable subrogation which are followed in Nebraska. In this case, the provisions of the insurance policy are in direct opposition to the equitable principles upon which subrogation is allowed and are therefore unenforceable. Under the terms of the policy, it is possible for a loss to be borne by the insured, not the insurer, despite the fact that the insured has paid the insurer to bear the risk of such a loss. The policy allows for the application of a subrogation right in the absence of a double recovery by an insured. By abrogating the principles of equitable subrogation, the insurance policy expands Blue Cross' subrogation and recovery rights beyond those allowed at equity, and the policy is therefore not enforceable. Subrogation clauses should be construed to confirm, but not expand, the equitable subrogation rights of insurers. *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993).

Decisions by other jurisdictions also support this conclusion. In *York v. Sevier County Ambulance Authority*, 8 S.W.3d 616, 619 (Tenn. 1999), the court rejected an argument that the " 'made whole' doctrine" was inapplicable, because subrogation had been provided for in the insurance policy. An insured must be made whole before subrogation rights arise in favor of insurers. *Id.* See, also, *Hare v. State*, 733 So. 2d 277, 284 (Miss. 1999) (court adopted " 'made whole' rule" and held that it is not to be overridden by contract language, because intent of subrogation is to prevent double recovery by insured); *Ruckel v. Gassner*, 253 Wis. 2d 280, 646 N.W.2d 11 (2002) (insured must be made whole before insurer may exercise subrogation rights against its insured, even when unambiguous language in insurance contract states otherwise).

The dissent argues that because the contract is clear and unambiguous, we must enforce it despite important equity and policy concerns to the contrary. It has long been the rule in Nebraska that under principles of equity, an insurer is entitled to subrogation only when the insured has received or would receive a

double recovery. An insurer should not recover sums received by the insured unless the insured has been fully indemnified. See, *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997); *Frohlich, supra.* This rule of subrogation has been applied to the relationship between the insurer and its insured.

The question is whether an insurer can by contractual agreement abrogate the equitable principles of subrogation in spite of the rule which requires that the insured must be fully compensated before the insurer may subrogate against its insured. We have resolved this issue in favor of the insured and against the insurer because we conclude that the equitable principles are controlling. As we clearly recognized in *Frohlich*, these are risks of loss that the insurer is paid to bear. Allowing the insurer to subrogate when the insured has not been fully compensated would permit the insurer to take all the insured's compensation with the result that the insured could be left with nothing for future medical bills or compensation for personal injuries. It is this harsh result that the equitable made whole principle of subrogation protects against.

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

In the case at bar, the subrogation and right to recovery provisions of the insurance policy are contrary to Nebraska law, which requires that an insurer cannot recover under subrogation unless the insured has been made whole. Because there is a genuine issue of material fact as to whether Dailey's settlement with Union Pacific fully compensated him for his injuries, the district court erred in granting summary judgment in favor of Blue Cross.

## CONCLUSION

For the reasons stated herein, the judgment of the district court is reversed, and the cause is remanded for further proceedings. Based on our resolution of Dailey's appeal, it is not necessary for us to address Blue Cross' cross-appeal, and it is dismissed.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

STEPHAN, J., dissenting.

I respectfully dissent. In my view, the majority has made an unwarranted departure from the controlling legal rule clearly articulated in *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993), and *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997), that equitable principles of subrogation may be modified by a specific contractual provision.

The group health insurance policy at issue here gives Blue Cross a contractual subrogation interest in Dailey's personal injury claim against Union Pacific and a contractual right to reimbursement from Dailey with respect to settlement proceeds he receives from Union Pacific. Both provisions of the policy, which are set forth in full in the majority opinion, provide that they shall apply "regardless of whether or not there has been full compensation." Because we have noted that "a right to reimbursement is encompassed within the concept of subrogation," *Continental Western Ins. Co.*, 253 Neb. at 371, 570 N.W.2d at 712, I will focus my analysis on the issue of whether Blue Cross has an enforceable conventional subrogation right arising from the express provisions of its policy, notwithstanding the fact that Dailey has not been fully compensated for his injuries.

In *Frohlich*, this court recognized that there are two distinct types of subrogation: subrogation based on a contract, known as conventional subrogation, and subrogation arising by operation of law, known as legal subrogation. In comparing the two, we stated:

> Generally, subrogation is unavailable until the debt owed to a subrogor has been paid in full. . . . *However, if a contract provides for subrogation on payment of less than the full amount of a debt or loss, partial payment of a debt or loss may be the basis for subrogation. . . . However, unless a contract specifically provides otherwise,* equitable

> principles apply even when a subrogation right is based on contract. . . . Also, if a contractual right of subrogation is merely the usual equitable right which would have existed in any event in the absence of a contract, equitable principles control subrogation.

(Citations omitted.) (Emphasis supplied.) *Frohlich*, 243 Neb. at 117-18, 498 N.W.2d at 78-79. Applying these general principles in the context of insurance, we concluded that "an insurance policy reaffirms the rights of parties relative to subrogation but, in the absence of an express provision to the contrary, does not alter fundamental principles pertaining to subrogation." *Id.* at 119, 498 N.W.2d at 79. After determining that the policy at issue in *Frohlich* did not define the precise nature or extent of the insurer's subrogation interest and that the record did not disclose whether the insured had been fully compensated by the tort settlement, we reversed a judgment in favor of the insurer and remanded the cause for further proceedings.

In my view, *Frohlich* clearly recognized the right of an insurance company to specifically contract for a conventional subrogation right, regardless of whether its insured has been fully compensated by a tort settlement with a third party. Applying Nebraska law in *McIlheran v. Lincoln Nat. Life Ins. Co.*, 31 F.3d 709 (8th Cir. 1994), the Eighth Circuit Court of Appeals reached the same conclusion. At issue in *McIlheran* was a provision in a group health insurance policy which stated that the insurer's subrogation right against the proceeds of a third party settlement " 'will apply whether or not payment has been made by the third party for all of the Insured Individual's losses.' " (Emphasis omitted.) *Id.* at 711. Rejecting an argument that this provision was contrary to the law and public policy of Nebraska, the *McIlheran* majority relied upon this court's pronouncement in *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993), that " 'if a contract provides for subrogation on payment of less than the full amount of a debt or loss, partial payment of a debt or loss may be the basis for subrogation.' " *McIlheran*, 31 F.3d at 711, quoting *Frohlich, supra.* The *McIlheran* majority reasoned that if the *Frohlich* court had believed that policy language providing for subrogation in the absence of full recovery would violate Nebraska law or policy, it "would have held that in no case may

an insurer subrogate if the insured has not been fully compensated." 31 F.3d at 711.

A further indication that we meant what we said in *Frohlich* is apparent from the structure of our analysis in *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997). In that case, an insurance carrier claimed a right of conventional subrogation with respect to a third-party tort settlement that did not result in full compensation to the injured insured. Citing the rule from *Frohlich* that "in the absence of an express provision to the contrary, an insurance policy reaffirms the rights of parties relative to subrogation but does not alter the fundamental principles pertaining to subrogation," we first examined whether the subrogation provision of the policy described only rights which would have existed under equitable principles of subrogation, noting that if it did, then the subrogation clause could not be fairly characterized as a "distinct contractual undertaking" between the parties which would supersede the equitable "made whole" rule. *Continental Western Ins. Co.*, 253 Neb. at 370, 570 N.W.2d at 711. We concluded that the policy did not create a contractual right that was different from the insurer's equitable right to subrogation and that thus, there was no right of subrogation where the insured had not been fully compensated by her settlement with the tort-feasor. There would have been no reason to engage in this analysis if, as the majority holds today, an express policy provision creating a subrogation right in the absence of full compensation is unenforceable, and statements to the contrary in *Frohlich* are mere dicta.

In the instant case, the district court followed the analytical framework which we outlined in *Continental Western Ins. Co.* and correctly determined that the health insurance policy in question included a distinct contractual undertaking which gave Blue Cross subrogation rights regardless of whether its insured is fully compensated by a third-party tort settlement. The district court then concluded that the provision did not contravene public policy and was enforceable.

In holding to the contrary, the majority adopts the reasoning of Wisconsin courts that a subrogation clause of the type at issue here is unenforceable because "it is inequitable." *Ruckel v. Gassner*, 253 Wis. 2d 280, 295, 646 N.W.2d 11, 19 (2002). See

*Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982). I disagree with this reasoning because, as another court has succinctly noted: "This is not a case based in equity, but rather on contractual terms." *In re Estate of Scott*, 208 Ill. App. 3d 846, 849, 567 N.E.2d 605, 607, 153 Ill. Dec. 647, 649 (1991).

An insurance policy is a contract. *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003); *Hall v. Auto-Owners Ins. Co.*, 265 Neb. 716, 658 N.W.2d 711 (2003). In reviewing an insurance policy, we construe the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. *Auto-Owners Ins. Co. v. Home Pride Cos., ante* p. 528, 684 N.W.2d 571 (2004); *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004). The majority finds no ambiguity in the policy, noting that it "allowed subrogation and a right to recovery regardless of whether the insured was fully compensated for his or her loss." Nevertheless, citing *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993), the majority construes the policy "to confirm, but not expand, the equitable subrogation rights of insurers." By engaging in such construction of unambiguous policy language, the majority has ignored the established principle that when the terms of an insurance contract are clear, no judicial construction is required or permitted. See *Boutilier v. Lincoln Benefit Life Ins. Co., ante* p. 233, 681 N.W.2d 746 (2004). Moreover, I am unaware of any previous case in which this court has invalidated an unambiguous provision of an insurance policy based upon equitable considerations, as the majority has done here. Does this mean that insurance policies and other contracts will now be required to conform to all of the requirements of equity before the law will enforce them?

This court has now joined a minority of jurisdictions which imposes a bright-line rule that an insurance company may not utilize a conventional subrogation clause which expressly applies regardless of whether the injured insured has received full compensation from a tort-feasor. Only two jurisdictions appear to soundly adhere to this rule, as the Wisconsin cases cited above and *Hare v. State*, 733 So. 2d 277 (Miss. 1999), so hold.

The relevant authority in two other jurisdictions is questionable, because both *York v. Sevier County Ambulance Authority,* 8 S.W.3d 616 (Tenn. 1999), and *Davis v. Kaiser Foundation,* 271 Ga. 508, 521 S.E.2d 815 (1999), rely heavily on the reasoning of *Powell v. Blue Cross and Blue Shield of Alabama,* 581 So. 2d 772 (Ala. 1990), *overruled, Ex parte State Farm Fire and Casualty Co.,* 764 So. 2d 543 (Ala. 2000), based upon a determination by the Supreme Court of Alabama that *Powell* was wrongly decided. As the majority notes, Alabama law currently provides that an agreement of the parties may supersede the general rule that a subrogee is not entitled to recover unless the insured has had a full recovery. See *Ex parte Cassidy,* 772 So. 2d 445 (Ala. 2000). Given the subsequent overruling of *Powell,* the opinions from Tennessee and Georgia are not persuasive.

In *Frohlich,* we cited and relied upon *Westendorf by Westendorf v. Stasson,* 330 N.W.2d 699 (Minn. 1983), as well as other cases, for the rule that "unless a contract specifically provides otherwise, equitable principles apply even when a subrogation right is based on contract." *Frohlich,* 243 Neb. at 118, 498 N.W.2d at 79. The actual language used by the Minnesota Supreme Court in *Westendorf by Westendorf* was "absent express contract terms to the contrary, subrogation will not be allowed where the insured's total recovery is less than the insured's actual loss." 330 N.W.2d at 703. In *Hershey v. Physicians Health Plan,* 498 N.W.2d 519 (Minn. App. 1993), the Minnesota Court of Appeals considered the question of whether the phrase "absent express contract terms to the contrary" in *Westendorf by Westendorf* permitted an insurer to contract for subrogation regardless of whether the insured had been fully compensated, and concluded that it did. The court determined that the language in *Westendorf by Westendorf* recognizing a right to override the general equitable rule by contract was not dictum. The court concluded:

> We are mindful that important equity and policy concerns support the full recovery rule and that the adhesive nature of insurance contracts generally compels courts to be vigilant in safeguarding the rights of insureds. Nonetheless, in *Westendorf* the supreme court flatly stated that the full

recovery rule may be modified by contract; we are obliged to follow that unambiguous statement.

*Hershey*, 498 N.W.2d at 521.

Other courts have likewise concluded that an insurance policy or other contract may supersede the equitable rule by unambiguously providing for a subrogation right in a tort settlement even where the insured does not receive full compensation. *Fields v. Farmers Ins. Co., Inc.*, 18 F.3d 831 (10th Cir. 1994) (applying Oklahoma law); *Ex parte State Farm Fire and Casualty Co.*, 764 So. 2d 543 (Ala. 2000); *Samura v. Kaiser Foundation Health Plan*, 17 Cal. App. 4th 1284, 22 Cal. Rptr. 2d 20 (1993); *In re Estate of Scott*, 208 Ill. App. 3d 846, 567 N.E.2d 605, 153 Ill. Dec. 647 (1991); *Culver v. Insurance Co. of North America*, 115 N.J. 451, 559 A.2d 400 (1989); *Peterson v. Ins. Co.*, 175 Ohio St. 34, 191 N.E.2d 157 (1963). See *Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864 (Utah 1988) (recognizing equitable principles underlying subrogation can be modified by contract, but applying equitable principles because record did not include alleged contractual modification), *disapproved on other grounds, Sharon Steel v. Aetna Cas. and Sur.*, 931 P.2d 127 (Utah 1997).

While I conclude that Nebraska law specifically permits a contractual override of the equitable "made whole" principle of subrogation, I acknowledge that this rule could lead to a harsh result. It is true that a subrogated health insurer having a policy which includes such an override provision could recover 100 percent of its claim from a third-party tort settlement, while the injured insured could recover a much smaller percentage of his or her provable claim from the remaining proceeds. Such a result can, of course, be anticipated and alleviated through negotiation, as was done in this case where Dailey secured an agreement from Union Pacific to satisfy and indemnify him against any subrogation lien which Blue Cross may have, in addition to the payments which Union Pacific has agreed to make directly to Dailey. However, I anticipate that the bright-line rule adopted by the majority, which precludes any recovery by a subrogated insurer unless the insured has been made completely whole by the tort-feasor, will also lead to harsh results. As I understand the reasoning of the majority, if an injured party settles for 99

percent of full compensation, a subrogated health insurance carrier could recover nothing from the settlement and its rights against the tort-feasor would be extinguished. A better solution to this dilemma would be a requirement that where a tort settlement yields less than full compensation, the injured party and the subrogated health insurer would share the proceeds of the settlement on a pro rata basis. The imposition of such a requirement, however, would require legislation. See Neb. Rev. Stat. § 44-3,128.01 (Reissue 1998) (permitting pro rata subrogation under medical payments coverage of automobile liability policies). In the absence of such legislation with respect to health insurance policies, it is my opinion that an insurer is free to include in its policy the type of subrogation clause before us in this case and that the courts are obligated to enforce them. The judgment of the district court was therefore correct in all respects, and I would affirm.

CONNOLLY, J., joins in this dissent.